IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Robert B. Six, et al.,** | **Case No.: 2:11-cv-698** |
| Plaintiffs | Judge Graham |
| v. | Magistrate Judge Abel |
| **Robert Beegle, et al.,** | |
| Defendants. | |

## OPINION AND ORDER

This matter is before the court on motions for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), filed by two groups of individual defendants: defendants Donald Scott Fitch and Jonathan Jenkins (doc. 56) and defendants Robert Beegle, Adam Smith, Rick Smith, William Gilkey, Scott Trussel, and Brian Rhodes (doc. 57).  Also before the court is plaintiffs' motion for leave to file an amended complaint (doc. 58).

**I.	Facts**

Plaintiffs Robert Six and Bobbi Six are residents of Meigs County, Ohio.  Defendants Fitch and Jenkins are Special Agents with the Ohio Bureau of Criminal Investigation.  (Doc. 56 at 2.)  Defendants Beegle, Adam Smith, Rick Smith, Gilkey, Trussel, and Rhodes are alleged to be Meigs and Washington County Sheriff's Office law enforcement officers.  (Doc. 1 ¶¶ 4-5.)  Each of the moving defendants is sued in his individual capacity.  Id.  Co-defendants are various

law enforcement officers with the Washington County Sheriff's Office, the Columbus Division of Police, and the Ohio Department of Natural Resources. Each co-defendant is also sued in his or her individual capacity. (Doc. 1 at 4-5.)

Plaintiffs' complaint alleges the following: On August 5, 2009 plaintiff Robert Six was at his home in Meigs County, Ohio when defendants came onto his property and into his residence. Defendants were on the premises pursuant to a search warrant issued by the Meigs County Court of Common Pleas. The defendants seized Mr. Six and placed him in a police car. Although it was an extremely hot summer day, defendants did not roll down the windows or turn on the air conditioning and Mr. Six was left in the vehicle for several hours. Due to the heat, Mr. Six became unconscious and required medical treatment.

While Mr. Six was in the police car, the defendants conducted a search of his property. According to the complaint, defendants seized a large number of personal items, including ammunition and hundreds of firearms. Some of the firearms belonged to each plaintiff. Plaintiffs allege that defendants maintained two inventory lists for the items seized–one for firearms and one for personal property. However, defendants allegedly failed to list numerous firearms that were seized from the property. Plaintiffs also allege that during the search of the property, the defendants observed properly tagged deer antlers and wild turkey feathers. Defendants allegedly removed the tags and then charged Mr. Six with the crime of possessing untagged antlers and feathers. The charges stemming from the untagged antlers and feathers were dismissed by the Meigs County Municipal Court.

After the search, Mr. Six was charged with aggravated possession of marijuana with a forfeiture specification seeking to forfeit "approximately three hundred firearms and

ammunition." The common pleas court granted the motion to dismiss the forfeiture specification and ordered the return of the firearms and ammunition to the plaintiffs. The return of the property was overseen by Steve Jagers of Ohio Valley Investigations who determined that defendants failed to return some of the seized firearms. Plaintiffs allege that in addition to some of the documented firearms, defendants seized and failed to return firearms that they failed to document.

On August 3, 2011 plaintiffs filed five claims against defendants arising from the search of plaintiffs' property: illegal seizure of plaintiffs' personal property (Claim One), damage of personal property illegal seized (Claim Two), illegal seizure of Mr. Six's person (Claim Three), malicious prosecution in connection with charges brought against Mr. Six related to untagged dear antlers and turkey feathers (Claim Four), and a conspiracy to illegally seize plaintiffs' property and to deprive them of various constitutional rights (Claim Five). All of plaintiffs' claims are brought pursuant to 42 U.S.C. §1983.

In a May 4, 2012 Order, the court granted motions for judgment on the pleadings brought by defendants Staats, Rhodes, Nohe, Parks, and Roberts. (Doc. 55.) The Court held that the complaint had failed to allege how each of the moving defendants was personally involved in the alleged constitutional violations, and granted the moving defendants' motions to dismiss. However, the Court directed the clerk to defer entry of final judgment for the moving defendants, and granted plaintiffs 20 days to move to amend their complaint. Plaintiffs' motion to amend their complaint in an attempt to cure the deficiency identified in the previous order is now before the court, along with additional motions for judgment on the pleadings.

**II.     Legal Standard**

A.     Motion to Amend

Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend the complaint after a responsive pleading has been filed only by leave of the court, but "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2).  That standard was construed by the Supreme Court in Foman v. Davis, 371 U.S. 178, 182 (1962):

> If the underlying facts or circumstances relied upon by plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.--the leave sought should be "freely given."  Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court . . . .

Delay alone is not a ground for denying leave to amend.  Dana Corp. v. Blue Cross & Blue Shield Mut., 900 F.2d 882, 888 (6th Cir. 1990).  The party opposing leave to amend must demonstrate significant prejudice.  Duggins v. Steak 'N Shake, Inc., 195 F.3d 828, 834 (6th Cir. 1999); Moore v. City of Paducah, 790 F.2d 557, 562 (6th Cir. 1986).  The Court determines prejudice considering

> whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction.

Phelps v. McClellan, 30 F.3d 658, 662-63 (6th Cir. 1994).  The longer the period of unexplained delay, the lesser the burden of demonstrating prejudice.  Id.  Courts have frequently found prejudice where the amendment is made after the discovery deadline has passed.  Duggins, 195 F.3d at 834 (amendment sought after discovery and case dispositive motions deadlines had passed and while a motion for summary judgment was pending); United States v. Midwest

Suspension and Brake, 49 F.3d 1197, 1202 (6th Cir. 1995) (Amendment sought one month before trial); Priddy v. Edelman, 883 F.2d 438, 446 (6th Cir. 1989); Janikowski v. Bendix Corp., 823 F.2d 945, 952 (6th Cir. 1987).  A party who moves to amend late in the lawsuit has "an increased burden to show justification for failing to move earlier."  Wade v. Knoxville Utils. Bd., 259 F.3d 452, 459 (6th Cir. 2001) (citation omitted).  Nonetheless, even amendments made on the eve of trial are permissible when there is no demonstrable prejudice.  United States v. Wood, 877 F.2d 453, 456-57 (6th Cir. 1989) (amendment permitted three weeks before trial).  Further, even if there is prejudice, the Court may fashion a remedy, such as assessing the moving party the costs of duplicative discovery, which would permit the amendment.  See Janikowski, 823 F.2d at 952; Moore v. Paducah, 790 F.2d 557, 562 (6th Cir. 1986); Adkins v. Int'l Union, 769 F.2d 330, 334 (6th Cir. 1985).

In addition to prejudice, futility may provide a basis for denying leave to amend.  The Sixth Circuit has ruled that "[i]t is well settled that the district court may deny a motion for leave to amend a complaint if such complaint, as amended, could not withstand a motion to dismiss." Neighborhood Dev. Corp. v. Advisory Council on Historic Pres., 632 F.2d 21, 23 (6th Cir. 1980); Matthews v. Jones, 35 F.3d 1046, 1050 (6th Cir. 1994).  A court will not ordinarily consider the merits of a proposed amended complaint in ruling on a motion for leave to amend unless it appears to be frivolous.  See Madison Fund, Inc. v. Denison Mines Ltd., 90 F.R.D. 89, 91 (S.D.N.Y. 1981); Key Pharm., Inc. v. Lowey, 54 F.R.D. 445, 449 n.5 (S.D.N.Y. 1972).  Normally, the merits of a complaint are best resolved through a motion to dismiss or a motion for summary judgment.  WIXT Television, Inc. v. Meredith Corp., 504 F. Supp. 1003, 1010 (N.D.N.Y. 1980)).  However, if there is no set of facts that could be proven under the amendment

5

would constitute a valid and sufficient claim, leave should be denied.  See Cooper v. American Emp'rs' Ins. Co., 296 F.2d 303, 307 (6th Cir. 1961).

  B. Judgment on the Pleadings

 A motion for judgment on the pleadings pursuant to Rule 12(c) "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  See also Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998) ("The standard of review applicable to a Rule 12(c) motion is the same as that for a Rule 12(b)(6) motion.") (citation omitted).  All well-pleaded allegations must be taken as true and must be construed most favorably toward the non-movant.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A motion for judgment on the pleadings is directed solely to the complaint and any exhibits attached to it.  Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983).  The merits of the claims set forth in the complaint are not at issue on a motion for judgment on the pleadings.  Consequently, a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(c) if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief.  See Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 702 (6th Cir. 1978); Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976).  However, the court "need not accept as true legal conclusions or unwarranted factual inferences." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) (citations omitted).

 When the complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Though "[s]pecific facts are not necessary," Erickson, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," Twombly, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. Iqbal, 556 U.S. at 678-79; Twombly, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**III.     Legal Analysis**

   A.     Amendment of the Complaint

Plaintiffs' proposed amended complaint is substantially similar to the initial complaint. The changes that plaintiffs propose seek to cure the deficiency noted in the Court's order of May 4, 2012 (doc. 55). In that order, the Court held that the plaintiffs' complaint "failed to identify a single action specifically taken by any one of the moving defendants. Plaintiff's entire complaint alleges that 'defendants' committed each act. There is no allegation that [any individual moving defendant was] actually present . . . ." (Doc. 55 at 5.) Plaintiffs seek to cure this deficiency with their amended complaint by changing general allegations about "defendants" into specific allegations regarding named individual defendants. There are a large number of specific allegations, and in most cases, many versions of the same allegation are made in the alternative.

For example, where the original complaint alleges that "[d]efendants seized the person of Mr. Six and placed him into the back seat area of a police vehicle," (doc. 1 ¶ 14), the proposed amended complaint includes eleven different paragraphs that allege, in the alternative, that eleven different defendants placed Mr. Six in a police car. (Doc. 58-1 ¶¶ 14, 23, 26, 29, 32, 35, 38, 41, 44, 47, 50). Each of these alternative allegations does what the original complaint failed to do by alleging "a single action specifically taken" by a specific defendant. For example, paragraph 14 of the proposed amended complaint alleges that "[d]efendant Scott Fitch seized the person of Mr. Six and placed him into the back seat area of a police vehicle and detained him there for several hours on a hot day with the windows rolled up." (Doc. 58-1 ¶ 14.)

     Defendants argue that the proposed amended complaint fails to cure the deficiency identified in the prior order, and that allowing the amendment would thus be futile. Defendants Fitch and Jenkins argue that the proposed amended complaint "amounts to nothing more tha[n] changing the form of Plaintiffs' Complaint, without altering the substantive deficiency already identified by the Court." (Doc. 59 at 3.) Defendant Nohe and four co-movants similarly claim that "the Proposed Amended Complaint fails to put Defendants on notice as to which claims are attributed to their personal actions." (Doc. 60 at 4.) This argument is difficult to square with the text of the proposed amended complaint. Paragraph 47 of the proposed amended complaint alleges that "[d]efendant Greg Nohe seized the person of Mr. Six and placed him into the back seat area of a police vehicle and detained him there for several hours on a hot day with the windows rolled up." (Doc. 58-1 ¶ 47.) This allegation clearly puts defendant Nohe on notice

that plaintiffs allege that he put Mr. Six in a hot car.[1]

The changes proposed by plaintiffs are more than a shift in form. The plaintiffs seek to add substance to their complaint where previously it was lacking. Allegations that "defendants" took some action (for example, putting Mr. Six in a car, an action which ordinarily is not accomplished by 15 people at once) may leave any specific defendant wondering whether they are alleged to have taken that specific action. But an allegation that a specific defendant took a specific action puts that defendant on notice. That the complaint also alleges, in the alternative, that other defendants took the same action, does not change the fact that the proposed amended complaint is clear in its allegations against specific defendants. Specific allegations against specific defendants cure the deficiency identified in the Court's previous order.

Moving defendants also argue that the proposed amendment would be futile because the factual allegations in the proposed amended complaint are implausible. (Doc. 59 at 3; doc. 60 at 4.) For example, movants argue that plaintiffs "allege Defendants Fitch and Jenkins were in two different places at the same time." (Doc. 59 at 3.) According to movants, the amendment would be futile because plaintiffs' plead inconsistently that Fitch and Jenkins were both outside of plaintiffs home, putting Mr. Six into a squad car, and inside the home conducting a search. (Doc. 59 at 3-4.) But inconsistent claims are specifically allowed by Federal Rule of Civil Procedure 8(d)(3): "A party may state as many separate claims or defenses as it has, regardless of consistency." Furthermore, there is nothing inconsistent about alleging that one person could be in two different places over the course of a search lasting "several hours." (Doc. 58-1 ¶ 14.) For

---

[1] At this stage of litigation, the Court assumes that this allegation has "evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ." FED. R. CIV. PRO. R. 11(b)(3).

these reasons, plaintiffs' proposed amendments to their complaint would not be futile.[2]

B. <u>Judgment on the Pleadings</u>

Moving defendants present arguments that each of the five counts in plaintiffs' complaint and proposed amended complaint should be dismissed.

i. *Illegal Seizure of Property*

Defendants argue that plaintiffs' claims related to the seizure of property, particularly guns, must fail because seizure of guns is permitted by the search warrant. (Doc. 56 at 5-7; doc. 57 at 6-7; doc. 59 at 5-7; doc. 60 at 5-6.) The search warrant describes the property that may be seized in detail:

> Marijuana or other drugs, in any form or condition, rolling papers, pipes, bongs or other devices, instruments or things used in the cultivation, preparation/processing or sale of Marijuana and/or the processing of the same, together with any records . . . evidencing the cultivation, preparation/processing or distribution of Marijuana or other illegal drugs relating to the cultivation preparation/processing or sale of Marijuana, said drugs and contraband, or some part thereof, other illegal drugs, dangerous drugs or controlled substances, concealed in and at the premises described herein and above as being the residence, at said location, evidence of possession, distribution and cultivation of marijuana and drugs in violation of 2925 of the Ohio Revised Code, along with any related evidence.
> (Doc. 17-1 at 2.)

This authorization does not mention firearms. Defendants nonetheless make three arguments that this text nonetheless authorizes the seizure of guns.

First, defendants argue that the warrant authorizes the seizure of guns by authorizing the seizure of "various tools, devices, objects or things used in the cultivation,

---

[2] In addition to these arguments, defendants opposing plaintiffs' motion to amend make several arguments that are unrelated to the amendment of the complaint, but instead go to the substance of both the initial and proposed amended complaint. Those arguments that, if supported, would require dismissal of one or more of plaintiffs' claims against moving defendants are addressed below.

preparation/processing or sale of Marijuana . . . ." (Doc. 17-1 at 2.)  This argument rests on the idea that "[g]uns and drugs can go hand in hand." (Doc. 56 at 6.)  Guns and drugs certainly *can* go hand in hand, but not all guns are linked to drugs.  Evidence may surface that, in this case, officers conducting the search reasonably believed that the guns at issue were used in the drug trade, but no such evidence is before the court.

 Next, defendants argue that the guns represent "proceeds from the . . . sale of Marijuana . . . ." (Doc. 17-1 at 2.)  Movants argue that "a reasonable, objective law enforcement officer at this search could conclude that the plaintiffs . . . . used their illegal proceeds to cultivate Mr. Six's firearm collection . . . ." (Doc. 56 at 6; see also doc. 57 at 7.)  Defendants may be able to support this claim in subsequent stages of this litigation, but in considering a motion to dismiss, the court views the evidence in a light most favorable to the plaintiff.  Plaintiff alleges that the seized firearms were unrelated to the drug trade, and that officers lacked probable cause to believe there was any connection between the guns and the drug trade. (Doc. 58-1 ¶ 96.)  None of plaintiffs' allegations suggest a connection between the seized guns and drugs.

 Finally, defendants argue that the warrant authorized the seizure of the firearms because they were "evidence of possession, distribution and cultivation of marijuana and drugs . . . ." (Doc. 17-1 at 2; see also doc. 59 at 7.)  Again, while defendants may present evidence that these guns were evidence of drug crimes, the court will not accept the proposition promoted by defendants that guns are necessarily evidence of drugs.

   ii. *Illegal Seizure of Personal Property by Damaging it*

 Movants argue that plaintiffs' second claim fails because "Plaintiffs allege no factual grounds to support a plausible belief that these Defendants improperly converted their property . .

11

. . They do not allege which firearms were taken by which Defendant.  They did not allege how, where, or when these officials took such firearms.  They did not allege who was present when the improper conversion took place." (Doc. 59 at 9; see also doc. 60 at 5-6.)

Plaintiffs include the same allegations against all fifteen defendants.  They allege that each defendant "failed to return the Plaintiffs' personal property that he [or she] illegally seized . . . ." (Doc. 58-1 ¶¶ 67, 71, 75, 79, 83, 87, 98, 101, 106, 110, 114, 118, 122, 126, 130.)  Contrary to movants' arguments, the facts alleged give rise to a plausible claim that each defendant "improperly converted their property."  Defendants argue that plaintiffs do not allege which firearms were taken by which defendant.  However, plaintiffs do include two lists of guns that they allege were inventoried and seized by defendants, but not returned.  (Docs. 1-5, 1-6.)  True, plaintiffs do not allocate each gun to a specific defendant, instead, the complaint suggests that each defendant converted each gun.  At this stage of litigation, these allegations in the alternative are sufficiently specific.  Defendants also argue that plaintiffs do not allege "how, where, or when these officials took such firearms." (Doc. 59 at 9.)  But the proposed amended complaint is explicit on this point–the guns were taken during the search, plaintiffs allege.

       iii.       *Illegal Seizure of Mr. Six*

Plaintiffs allege that Mr. Six was put "into the back seat area of a police vehicle and detained . . . there for several hours on a hot day with the windows rolled up. . . . The police vehicle . . . was not running, there was no air conditioning, no ventilation fan running and . . . it was extremely and unreasonably hot inside the police cruiser . . . [and] Mr. Six passed out and became unconscious due to the heat and lack of ventilation while he was being detained in the police vehicle." (Doc. 58-1 ¶¶ 14-19.)  Plaintiffs further allege that Mr. Six attempted and failed

12

to get the attention of defendants to alert them to the conditions under which he was detained. (Doc. 58-1 ¶ 21.)

Defendants Fitch and Jenkins argue that these allegations fail to state a claim that defendants violated Mr. Six's rights because the defendants did not know of and disregard a substantial risk of serious harm. (Doc. 59 at 10.) Viewing the allegations in a light most favorable to the plaintiffs, plaintiffs have alleged a situation in which any reasonable officer would know that an enclosed car would become unreasonably hot after a number of hours. Though Mr. Six alleges he attempted to do so, his claim does not fail because he failed to get the attention of officers and alert them to the rising heat in the vehicle. This would be a particularly unreasonable requirement considering that for at least part of the time that he was confined to the vehicle, Mr. Six alleges that he was unconscious. Defendants attempt to analogize a hot car to handcuffs that are too tight in order to establish that Mr. Six was required to inform them of the problem. (Doc. 59 at 11.) This analogy plainly fails. First, a detainee being handcuffed has no impediment to telling officers that they are too tight, whereas Mr. Six alleges that he was enclosed in a car as the temperature rose. He alleges that he attempted to alert officers before he became unconscious, but failed. Second, while it might not be apparent to an officer that a detainee's handcuffs are too tight, an officer placing a detainee in a closed squad car on a hot day has all the information necessary to surmise that temperatures inside the vehicle might rise.

      iv.    *Malicious Prosecution*

Defendants Fitch and Jenkins make several arguments that plaintiffs' claim for malicious prosecution must fail. (See doc. 56 at 7-8.) However, plaintiffs' amended complaint only includes defendants Woods and Shields in the malicious prosecution claim. (Doc. 58-1 at 45.)

    v.  Civil Conspiracy

  Moving defendants argue that plaintiffs have failed to plead with sufficient specificity to state a claim for a conspiracy under 42 U.S.C. § 1983.  (See doc. 56 at 8-9; doc. 57 at 8-9.) Under § 1983, "[a]ll that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." Hooks v. Hooks, 771 F.2d 935, 944 (6th Cir. 1985).  Further, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim under § 1983." Gutierrez v. Lynch, 826 F.2d 1534, 1538 (6th Cir. 1987).  Specific allegations must be sufficient to make claim of civil conspiracy plausible.  See Iqbal, 556 U.S. at 679.

  Plaintiffs identify five paragraphs in their amended complaint that they argue sufficiently plead their civil conspiracy claim.  (See doc. 62 at 9-10.)  Some of these allegations are mere conclusory statements.  For example, in paragraph 172, plaintiffs allege that "[t]he actions taken by defendants . . . were done as part of a conspiracy in which all of the Defendants participated, to engage in conduct which violated the constitutional rights of the Plaintiffs."  (Doc. 58-1 ¶ 172.)  This allegation sets forth no specific facts that would make the bare allegation of conspiracy plausible.  However, of the five paragraphs that plaintiffs argue support their conspiracy claim, two do include specific allegations.  Paragraphs 169 and 170 allege that "[t]he Defendants['] actions taken at the Plaintiffs' . . . property was discussed among the Defendants and a plan was developed by the Defendants prior to the search and seizure.  The illegal seizure and holding the Plaintiffs' personal property was discussed among the Defendants and a plan was

14

developed by the Defendants prior to the search and seizure." (Doc. 58-1 ¶¶ 169-70.) These allegations that defendants met, discussed plans, and agreed to violate plaintiffs' rights are sufficient to survive dismissal at this stage.

**IV.    Conclusion**

For the foregoing reasons, plaintiffs' motion for leave file an amended complaint (doc. 58) is GRANTED.  The motions for judgment on the pleadings (docs. 56, 57) are DENIED.

IT IS SO ORDERED.

s/ James L. Graham
James L. Graham
UNITED STATES DISTRICT JUDGE

Date: August 16, 2012