**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO,**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Robert Six, et al., | : | |
| | : | Case: 2:11-CV-00698 |
| Plaintiffs, | : | |
| v. | : | Judge James L. Graham |
| | : | |
| Robert Beegle, et al., | : | Magistrate Judge Mark R. Abel |
| | : | |
| Defendants. | : | |

**DEFENDANTS ROBERT BEEGLE, ADAM SMITH, RICK SMITH, WILLIAM**
**GILKEY, SCOTT TRUSSEL AND BRIAN RHODES'**
**MOTION FOR SUMMARY JUDGMENT**

Now come Defendants, Robert Beegle, Adam Smith, Rick Smith, William Gilkey, Scott Trussell and Brian Rhodes, through undersigned counsel, and hereby move for summary judgment pursuant to Fed. R. Civ. P. 56(c). Defendants assert that the evidence in this case establishes that there are no genuine issues of material fact and that Defendants are entitled to judgment as a matter of law on each of Plaintiffs' claims. A Memorandum in Support is attached hereto and incorporated herein.

Respectfully submitted,

s/ Paul M. Bernhart
Cheri B. Hass (0065157)
Paul M. Bernhart (0079543)
**FISHEL HASS KIM ALBRECHT LLP**
400 S. Fifth Street, Suite 200
Columbus, OH 43215
(614) 221-1216 - Telephone
(614) 221-8769 - Fax
chass@fishelhass.com
pbernhart@fishelhass.com

*Attorneys for Defendants Beegle, Adam Smith,*
*Rick Smith, William Gilkey, Scott Trussell*
*and Brian Rhodes*

<u>**MEMORANDUM IN SUPPORT**</u>

**I.**     <u>**Statement of the Facts**</u>

This case is about guns and drugs. Specifically it is about Plaintiff Robert Six's arrest and Defendant law enforcement officers' seizure of marijuana, firearms and other contraband from Plaintiffs' residence.

On August 4, 2009, United States Postal Inspector Donnie Simmons discovered a suspicious parcel being sent through the U.S. Mail. (Simmons Affidavit, Exhibit A, attached). The parcel was addressed to Plaintiffs' address, Sugar Mtn., 26225 Rutherford Road, Albany, Ohio 45710. Inspector Simmons determined that this was a good address. However, in checking the return addresses on the box he discovered that one did not exist and that the other was incorrect. (Id.). These return addresses were from Delmar, CA, a known area close to Mexico from where shipments of drugs are regularly sent through the mail. He contacted the Columbus police department which dispatched Sgt. Mark Cartwright, a canine handler since 2000 and his canine "Bart". (Id.) Upon arrival, Sgt. Cartwright set up a postal box lineup for inspection and put "Bart" to work. "Bart" alerted to the suspect parcel, indicating the presence of narcotic substances. (Id.).

Inspector Simmons sought and received a search warrant for the parcel from a Federal Magistrate of this Court. (Exhibit B, attached). Upon his return, the parcel was opened. Inside was four five gallon plastic buckets secured with lids. The lids were removed and marijuana was discovered in each bucket. (Adam Smith Affidavit, Exhibit C, attached). The buckets contained nearly forty (40) pounds of marijuana.

Inspector Simmons contacted Agent Scott Fitch at the Ohio Bureau of Criminal Investigations (BCI). Agent Fitch then notified the Meigs County Sheriff's Office and it was

planned that Simmons would deliver the boxes to the Albany, Ohio address (Plaintiffs' residence) through a controlled delivery. (Shields Dep. Tr. at 13-14). In the meantime, the Meigs County Sheriff's Office sought and received a search warrant for the premises when it was determined that the boxes had been delivered and opened. (Exhibit D, attached). To aid in determining when the boxes were opened, Simmons placed a thin wire (hooked to a transmitter placed in the box) along the seal of the boxes when he resealed them. The transmitter would signal officers in the immediate area when the seal (wire) was cut so they would know the boxes had been opened. (Shields Dep. Tr. at 16). A team consisting of law enforcement officers from the Ohio High Intensity Drug Trafficking Area (HIDTA), Ohio Bureau of Criminal Investigations (BCI), Major Crimes Task Force, Columbus Police Department, Meigs County Sheriff's Office, Franklin County Sheriff's Office and Washington County Sheriff's Deputy Brian Rhodes, were assembled to conduct the operation. (Shields Dep. Tr. at 14-16, 18).

The next day, August 5, 2009, the boxes were delivered to the Albany, Ohio address by Inspector Simmons posing as a regular postman. Plaintiff Robert Six signed for the parcel at this address. (R. Six Dep. Tr. at p. 64-66; R. Six Dep. Ex. B). Shortly after Simmons left, the law enforcement personnel waiting close by received the signal that a wire on one of the boxes had been cut and within seconds the officers were at Plaintiffs' residence. (Shields Dep. Tr. at 21-23; Six Dep. Tr. at 73-76).

Pursuant to the local search warrant, the parcel and the four five gallon buckets contained therein were found in the residence along with Robert Six. (Shields Dep. Tr. at 22-4; Jenkins Dep. Tr. at 26). These items were seized together with a large number of firearms, ammunition and other contraband. (R. Six Dep. Ex. H). In addition, several untagged deer antlers and turkey feathers were found and Ohio Department of Natural Resources Division of Wildlife officers

were called to the scene. (R. Six Dep. Tr. at 93). Those officers seized the untagged deer antlers and turkey feathers. Robert Six was arrested and charged with felony drug possession. (Exhibit E, attached). Mr. Six was also cited for unlawful possession of untagged deer antlers and turkey feathers. Mr. Six was detained at the scene while his property was searched. He was held in a law enforcement vehicle during most of the search. (R. Six Dep. Tr. at 95, 123). Subsequently, Mr. Six was transported to the Meigs County Jail. (R. Six Dep. Tr. at 128-129). At the residence, officers inventoried then transported the seized property to the Meigs County Sheriff's Office. (A. Smith Dep. Tr. at 58; R. Six Dep. Ex. H). The seized property was placed in the evidence room at the Meigs County Sheriff's Office. (A. Smith Dep. Tr. at 58-62).[1] Plaintiff Bobbi Six, Robert's wife, was not present at the Six residence during Mr. Six's arrest or while law enforcement officers were present at the residence on that day. (Bobbi Six. Dep. Tr. at 55-56).

In March, 2010, Robert Six was indicted by the Meigs County Grand Jury on a charge of aggravated possession of drugs, a felony. (R. Six Dep. Tr. at 147; see also, Indictment, Exhibit F, attached). In addition, the Grand Jury rendered a following forfeiture specification: "We the members of the Grand Jury…find and specify that the offender, at the time of his arrest incident to the offense, had in his possession or under his control, approximately three hundred firearms and ammunition, which was derived directly or indirectly from the commission of a felony drug offense and subject to forfeiture according to law". (Exhibit F, attached).

After the indictment, Mr. Six moved to dismiss the forfeiture specification. The Court granted the motion, dismissed the forfeiture specification and ordered the property seized at Mr. Six's residence be returned to him. (R. Six. Dep. Ex. F). The Court issued a subsequent

---

[1] An additional inventory list was started by the Meigs County Sheriff's Office after the property was in its custody. However, this list was not completed after it was learned that another agency would file criminal charges against Plaintiff Robert Six. (A. Smith Dep. Tr. at 71-72). Therefore, the inventory list titled "Meigs County Sheriff's Office Uniform Incident Report" is an incomplete list. (See R. Six. Dep. Ex. I).

Judgment Entry ordering the release of Mr. Six's property. (R. Six Dep. Ex. G). Specifically the Court ordered the Meigs County Sheriff's Office "to turn over all personal property it seized or obtained belonging to Six, including all firearms and ammunition, to Six, on Monday, April 11, 2011 at 10:00 am. Steve Jagers of Ohio Valley Investigations shall oversee the exchange of items at the cost to Meigs County." (Id.).

On April 11, 2011 Deputy Adam Smith, who oversees the evidence room at the Meigs County Sheriff's Office, returned Mr. Six's property to him. (A. Smith Dep. Tr. at 91-98). Deputy Rick Smith helped with the property return. (R. Smith Dep. Tr. at 65-69). Inventory was taken to ensure all property was returned. (A. Smith Dep. Tr. at 92-93; R. Smith Dep. Tr. at 65-66; Six Dep. Ex. J). In accordance with the Judgment Entry, Mr. Jagers oversaw the property return. (Jagers Dep. Tr. *in passim*). Both Mr. Six and Mr. Jagers signed the inventory receipt recognizing that the property was returned. (Six Dep. Tr. at 186; R. Six Dep. Ex. J; Jagers Dep. Tr. at 37-41; Jagers Dep. Ex. B). Neither Mr. Six nor Mr. Jagers notified the Sheriff's Office that any property was missing or that any item on the inventory list was not returned.

Mr. Six pled guilty to a lesser charge and received intervention in lieu of conviction. (R. Six Dep. Ex. R). This allowed Mr. Six to enter a drug treatment program and avoid serving jail time. The Court ordered that Mr. Six serve two years' probation ending in December, 2013. (Id.).

The Meigs County Sheriff's Office was never informed of missing property prior to Mr. Six bringing this lawsuit. The lawsuit alleges *inter alia* that Defendants unlawfully seized and did not return all of Mr. Six's firearms in violation of the Fourth, Fifth[2], Sixth and Fourteenth

_____

[2] Plaintiffs bring their claims for illegal seizure of property and illegal seizure of person under the Fifth and Sixth Amendments. These Amendments do not seem to apply to the allegations and facts of this case. The Due Process Clause of the Fifth Amendment only applies to Federal actors, which there are none here. The Takings Clause of the Fifth Amendment applies when there has been a taking of property for public use, which is not pled and does not apply to the facts of this case. The Sixth Amendment would seem to have no applicability to the allegations or facts of this case. Accordingly, Unless Plaintiffs intend to pursue these claims, Defendants request they be

Amendments; that Defendants damaged his property in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments; that Defendants unreasonably seized and detained Mr. Six in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments; and; that Defendants conspired to deprive Plaintiffs of their civil rights. (See Complaint *in passim*). The lawsuit is brought by both Robert and Bobbi Six.

Plaintiffs bring these claims against various law enforcement officials involved in Plaintiff Robert Six's arrest and seizure of property from Plaintiffs' residence. including Bureau of Criminal Investigation (BCI) Agents Jonathan Jenkins and Scott Fitch, Major Crime Task Force Agents John Staats, Greg Nohe and Scott Parks, Columbus Police Officers Jerry Peters and Christine Roberts, Meigs County Sheriff Robert Beegle and Meigs County Sheriff's Deputies Adam Smith, Rick Smith, William Gilkey and Scott Trussell, Washington County Sheriff's Deputy Brian Rhodes and Ohio Department of Natural Resources (ODNR) Wildlife Officers Josh Shields and Keith Wood. Each Defendant is sued in only their individual capacity.

These are the material facts and they are not in dispute. For the reasons that follow, Defendants Beegle, Adam Smith, Rick Smith, Gilkey, Trussell and Rhodes are entitled to judgment as a matter of law on each of Plaintiffs' claims.

## II. <u>Law and Argument</u>

### 1. **Qualified Immunity**

Defendants are entitled to qualified immunity as a basis for summary judgment on all of Plaintiffs' federal constitutional claims. As the Sixth Circuit has stated: Once a defendant raises qualified immunity, "the burden is on the plaintiff to demonstrate that the official [is] not entitled to qualified immunity," <u>Silberstein v. City of Dayton</u>, 440 F.3d 306, 311 (6th Cir.2006), by

---

dismissed. If Plaintiffs are pursuing claims under the Fifth and Sixth Amendments and offer a theory under which they pursue their claims, Defendants reserve the right and will address such claims in their Reply Memorandum.

alleging "facts sufficient to indicate that the [government official's] act in question violated clearly established law at the time the act was committed," <u>Russo v. City of Cincinnati</u>, 953 F.2d 1036, 1043 (6th Cir.1992). To defeat the qualified immunity bar, a plaintiff "must present evidence sufficient to create a genuine issue as to whether the defendant committed the acts that violated the law." <u>Adams v. Metiva</u>, 31 F.3d 375, 386 (6th Cir.1994); <u>Simmonds v. Genesee Cnty.</u>, 682 F.3d 438, 444 (6th Cir.2012).

Qualified immunity shields "[g]overnment officials performing discretionary functions" from liability for civil damages "as long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " <u>Poe v. Haydon</u>, 853 F.2d 418, 423 (6th Cir.1988) (<u>quoting</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 2735, 73 L.Ed.2d 396 (1982)). The affirmative defense of qualified immunity provides immunity from suit and not only as to liability. <u>See</u> <u>Pearson v. Callahan</u>, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009).

A qualified immunity analysis involves a two-step inquiry. First, the court asks whether the facts, viewed in the light most favorable to the plaintiff, show a violation of a constitutional right. Second, the court asks whether the right at issue was "clearly established" at the time of the alleged misconduct. <u>See</u> <u>Cochran v. Gilliam</u>, 656 F.3d 300, 306 (6th Cir.2011) (<u>citing</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001)). A court may consider these inquiries in either order. <u>See</u> <u>Id.</u> at 306.

To be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Leonard v. Robinson</u>, 477 F.3d 347, 355 (6th Cir.2007) (internal quotation marks omitted). In other words, the law must be sufficiently clear that a reasonable officer would be on notice that his conduct is

clearly unlawful. <u>Saucier</u>, 533 U.S. at 202, 121 S.Ct. at 2156. "[A]n action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning a court employs." <u>Feathers v. Aey</u>, 319 F.3d 843, 848 (6th Cir.2003) (<u>citing</u> <u>Hope v. Pelzer</u>, 536 U.S. 730, 742–43, 122 S.Ct. 2508, 2516–17, 153 L.Ed.2d 666 (2002)); <u>Smith v. City of Sturgis</u>, WL 3010939, 3-4 (W.D. Mich., 2012). Each of these Defendants are entitled to qualified immunity because they did not violate a clearly established constitutional right of Plaintiffs.

## 2. <u>Seizure of Property</u>

### <u>Fourth Amendment</u>

### A. <u>Defendants seized Plaintiffs' firearms and other contraband pursuant to a valid search warrant.</u>

Plaintiffs' Fourth Amendment claim for illegal seizure of property fails because Defendants had probable cause and seized Plaintiffs' firearms and other contraband pursuant to a valid search warrant. Generally, evidence may not be seized by the government absent a search warrant issued upon probable cause. See <u>Katz v. United States</u>, 389 U.S. 347, 351-352 (1967) (The Fourth Amendment protects individuals from warrantless intrusions upon a person's reasonable expectation of privacy.). Probable cause to conduct a search and seizure defeats a Fourth Amendment challenge to a government search and seizure. <u>Mays v. City of Dayton</u>, 134 F.3d 809, 813 (6th Cir. 1998). A determination of probable cause is valid if there were reasonable grounds to believe that the law was being violated and that the property was the fruit of that crime. <u>Id</u>. at 814. The seized property must be related to the scope of the permitted search. <u>United States v. Sanchez</u>, 509 F.2d 886, 889–90 (6th Cir. 1975). Plaintiffs do not challenge the validity of the search warrant. Rather, Plaintiffs assert that the warrant did not permit the seizure

of firearms and other contraband; however, the search warrant clearly permitted the seizure of these items.

Although no express term in the warrant permits the seizure of specific firearms, the warrant permits the seizure of, "various too[l]s, devices, objects or things used in the cultivation, preparation/processing or sale of Marijuana and/or the processing of the same. . ." (Exhibit D, attached). It also permitted the seizure of, "evidence of possession, distribution and cultivation of marijuana and drugs in violation of 2925 of the Ohio Revised Code, **along with any related evidence.**" (emphasis added) Id.

Courts have routinely found that firearms and drugs are related. Firearms are commonly regarded as a "tools of the drug trade". See, e.g., $110,873.00 in U.S. Currency, 159 Fed. Appx. at 652. "Common "tools of the trade" include firearms, digital scales, baggies, cutting equipment, and other drug-related paraphernalia. Id. Firearms "are 'tools of the trade' in drug transactions," United States v. Hardin, 248 F.3d at 489, 499 (6th Cir. 2001); United States. v. Shields 664 F.3d 1040, 1046 (6th Cir. 2011); See also United States v. Winder, 557 F.3d 1129 (10th Cir. 2009); United States v. Maddox, 388 F.3d 1356, 1366 n. 6 (10th Cir. 2004) (it is reasonable for police to "suspect that 'drug dealers commonly keep firearms on their premises as tools of the trade' "); United States v. Nicholson, 983 F.2d 983 (10th Cir. 1993) ("Drug traffickers may carry weapons to protect their merchandise, their cash receipts, and to intimidate prospective purchasers). In addition to the nearly forty (40) pounds of marijuana found at Plaintiffs' residence, there was $2,500 cash, scales and other contraband discovered. (Six Dep. Ex H).

It is reasonable to connect the marijuana, cash and firearms as related evidence to the possession, distribution and cultivation of marijuana. A reasonable, objective law enforcement

officer at this search could conclude that firearms are used to purchase marijuana, the illegal proceeds of the illegal drug sales are used to support the purchase of the firearms, the firearms are used to protect the illegal drugs, or a combination of these scenarios. (A. Smith Dep. Tr. at 83; Jenkins Dep. Tr. at 31-33; Fitch Dep. Tr. at 47, 50). Furthermore, it is reasonable for a law enforcement officer at this search to conclude that the firearms may be tools related to the criminal activity connected with the forty pounds of marijuana that was delivered to the Plaintiffs' residence. A number of officers involved testified that guns and drugs are related. The consensus among law enforcement is that when you seize drugs from a suspect, you also seize any firearms found. (Fitch Dep. Tr. at 47, 50; Jenkins Dep. Tr. at 31-33; Adam Smith Dep. Tr. at 83; Rick Smith Dep. Tr. at 32-33) That is what these officers were there to do. (Id.). According to Columbus Police Officer Jerry Peters, "The amount of marijuana discovered in [Plaintiffs' residence] would be more than personal use and considered an amount for trafficking purposes." (Peters Dep. Tr. at 46-47).

In March, 2010, Robert Six was indicted by the Meigs County Grand Jury on a charge of aggravated possession of drugs, a felony. In addition, the Grand Jury rendered the following forfeiture specification: "We the members of the Grand Jury…find and specify that the offender, at the time of his arrest incident to the offense, had in his possession or under his control, approximately three hundred firearms and ammunition, which was derived directly or indirectly from the commission of a felony drug offense and subject to forfeiture according to law". (Exhibit F, Attached). Consequently, probable cause existed when the drugs were seized to conclude that the firearms also were related to criminal activity. Barnes v. Wright, 448 F.3d 709, 716 (6th Cir. 2003) (cite omitted).

Plaintiffs' Fourth Amendment claim fails because the search warrant authorized the seizure of the firearms and other contraband and because probable cause existed allowing Defendants to seize these items. Defendants are entitled to summary judgment on Plaintiffs' Fourth Amendment claim for unlawful seizure of property.

**B.  All of Plaintiffs' property was returned**

After the Meigs County Common Pleas Court dismissed the forfeiture specification, all of Plaintiffs' property was returned.  Plaintiff Bobbi Six openly admits all of her property was returned. (Bobbi Six Dep. Tr. at 79, 83-84). Thus, there is absolutely no basis for her claim. Also, there is no evidence that any of Plaintiff Robert Six's property was not returned. The inventory taken when the property was seized matches the inventory taken when the property was returned. (R. Six Dep. Ex. H, J).  The same number of firearms seized and inventoried matches the number on the return inventory. (Id.).

The Meigs County Common Pleas Court ordered Steve Jagers of Ohio Valley Investigations - a neutral third party, to observe the return of Plaintiffs' property. (Jagers Dep. Ex. A; R. Six Dep. Ex. G).  On April 9, 2011, Mr. Jagers and Plaintiff Robert Six met at the Meigs County Sheriff's Office and Mr. Six's property was returned to him. (R. Six Dep. Tr. at 161-169; Jagers Dep. Tr. *in passim*).  Sheriffs' deputies participating in the return inventoried all of the property that was returned to Mr. Six. (R. Six Dep. Ex. J).  After the property was transported from the evidence room to Mr. Six's vehicle, both Mr. Six and Mr. Jagers signed the inventory list acknowledging receipt of the property. (Six Dep. Tr. at 186; Six Dep. Ex. J; Jagers Dep. Tr. at 37-41; Jagers Dep. Ex. B).  Neither Mr. Six nor Mr. Jagers questioned the inventory list or notified the Sheriff's Office of any missing property. (R. Six Dep. Tr. at 172-174, 188; Jagers Dep. Tr. at 37-41).

Mr. Six and Mr. Jagers left the Sheriff's Office in separate vehicles and Mr. Jagers never saw the property or Mr. Six again. (Jagers Dep. Tr. at 25-26, 45). According to Mr. Jagers, he kept a separate inventory list during the property return. (Jagers Dep. Tr. at 32-33). He later compared his list to the inventory list of property seized and created a list of alleged missing firearms. (Jagers Dep. Ex E, F). This list formed the basis of this lawsuit and is attached to Plaintiffs' Amended Complaint. However, Mr. Jagers now admits that he may not have included all of the firearms returned on his inventory list. (Jagers Dep. Tr. at 35). When asked whether guns were piling up faster than he could inventory them, he responded "That's possible, yes…it could have". (Jagers Dep. Tr. at 35). He further admits that firearms not on his inventory list were in fact on the return inventory list which he signed for receiving. (Jagers Dep. Tr. at 59-60). Plaintiff himself even acknowledges many of these items were returned. (Plaintiffs' Response to Interrogatory No. 15; R. Six Dep. Ex. N. Plaintiff admits that at least ten (10) firearms Mr. Jagers alleged were not returned, were in fact returned. (Id.). Mr. Jagers explained "it probably happened in the interchange from the sheriff's department getting them into the van, where [Mr. Six] may have walked by or I didn't get the serial number or the name". (Jagers Dep. Tr. at 58). In short, Mr. Jagers readily admits that guns were returned to Mr. Six that he did not inventory.

More importantly, the firearms on Mr. Jagers alleged "missing gun lists" were on the return inventory list Plaintiff and Steve Jagers signed for receiving. (Jagers Dep. Tr. at 59-66; Jagers Dep. Ex's. B, E, F) For example, the AG pistol Serial No. 1954 Mr. Jagers said was not returned is listed on pg. 615 of the list of guns returned, signed by Mr. Six and Mr. Jagers. (Jagers Dep. Tr. 59, Jagers Dep. Ex's B, E, F). Every firearm on Mr. Jager's "missing gun list" is accounted for on the return inventory list signed by Mr. Six and Jagers. (Id.). Even Plaintiff

admits that the firearms on Mr. Jagers "missing gun lists" are accounted for on the return inventory list. (R. Six. Dep. Tr. at 196-199).

Plaintiffs' Fourth Amendment claim that his property was seized and not retuned relies on Mr. Jagers alleged "missing gun lists" attached to Plaintiffs' First Amended Complaint. These lists are admittedly and obviously flawed. As such, the lists are both untrustworthy and irrelevant. Plaintiff admits that guns on the "missing gun lists" were returned. The evidence in this case establishes that all of the property seized from Plaintiffs' residence was returned. (R. Six Dep. Ex's. H, J). Plaintiffs' claim that property seized from his residence was not returned fails as unsupported by the irrefutable evidence in this case. Defendants are therefore entitled to summary judgment on this claim.

### C.  **None of Plaintiffs' property was damaged.**

There is no evidence that any of Plaintiffs' property was damaged. Plaintiffs cannot rest on mere allegations alone to survive summary judgment. A seizure of property occurs when there is some "meaningful interference with an individual's possessory interest in that property." United States v. Jacobsen, 466 U.S. 109, 113 (1984). Destruction of property may qualify as a meaningful interference with possession, constituting seizure under the Fourth Amendment. Id. at 113, 124.  Plaintiff claims the wood on some of the gunstocks needed refinished because evidence stickers had been attached to the firearms. (R. Six Dep. Tr. at 218-219). Plaintiff did this himself, at a de minimus cost. (Id.). Plaintiff has no evidence of further damage to his property. Because there is no evidence that any of Plaintiffs' property was damaged, Plaintiffs' Fourth Amendment claim based on damaged property must be dismissed.

**D. This Court does not have Jurisdiction to enforce the State Court Judgment Ordering the Return of Plaintiffs' Property.**

Assuming any property was not returned to Plaintiff, which Defendants deny, this Court does not have jurisdiction to enforce the Meigs County Common Pleas Court Order for the return of the property. US v. Rowzer, 201 F.R.D. 516 (D. Ka. 2001). Plaintiffs are contending that the Meigs County Sheriff's Office did not comply with the Meigs County Common Pleas Court Order to return his property. Plaintiffs' recourse was to return to the Common Pleas Court and address the matter through motion there. Id. Plaintiff admits he did not go back to that Court and request that the Court enforce its Order. (R. Six Dep. Tr. at 178-180). In fact, Plaintiff never even notified the Sheriff's Office that his property was allegedly not returned to him. (R. Six. Dep. Tr. at 179-180). Instead, Plaintiff filed this lawsuit basically asking this Court to enforce the Meigs County Common Pleas Court Order. This Court lacks jurisdiction to enforce the State Court Judgment and should dismiss Plaintiffs' claim for allegedly missing property on that basis.

## Fourteenth Amendment Due Process

Plaintiffs fail to state a claim for denial of due process. Plaintiffs do not provide factual allegations or explanation of this claim. It is therefore difficult to determine which actions of the Defendants, if any, Plaintiffs allege denied them due process.

The Fourteenth Amendment provides that "no person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. In addition to setting the procedural minimum for deprivations of life, liberty, or property, the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, 331 (1986). It does not prohibit every deprivation by the government of a person's life, liberty or property. Harris v. City of Akron, 20 F.3d 1396,

1401 (6th Cir. 1994). Only those deprivations which are conducted without due process are subject to suit under 42 U.S.C. § 1983. Id.

The Due Process Clause has a procedural component and a substantive one. The two components are distinct from each other because each has different objectives, and each imposes different constitutional limitations on government power. A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a choice to infringe upon a person's constitutionally protected property interest. It simply requires that the government provide "due process" before making such a decision. Howard v. Grinage, 82 F.3d 1343, 1349–53 (6th Cir. 1996). The goal is to minimize the risk of erroneous deprivation, to assure fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process. Id. Procedural due process requires that an individual be given the opportunity to be heard "in a meaningful manner." See Loudermill v. Cleveland Bd. of Educ., 721 F.2d 550, 563 (6th Cir. 1983). Procedural due process claims do not consider the egregiousness of the deprivation itself, but only question whether the process accorded in conjunction with the deprivation was constitutionally sufficient. Howard, 82 F.3d at 1350. Although the existence of a protected liberty or property interest is the threshold determination, the focus of this inquiry centers on the process provided, rather than on the nature of the right.

Substantive due process, on the other hand, serves the goal of preventing "governmental power from being used for purposes of oppression," regardless of the fairness of the procedures used. See Daniels v. Williams, 474 U.S. 327, 331 (1986). Substantive due process serves as a vehicle to limit various aspects of potentially oppressive government action. Id. It serves as a check on legislation that infringes on fundamental rights otherwise not explicitly protected by the

Bill of Rights; or as a check on official misconduct which infringes on a "fundamental right;" or as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally "shocking to the conscious," as to rise to the level of a constitutional violation. Howard, 82 F.3d at 1349. Plaintiffs cannot establish that either a procedural or substantive due process violation occurred.

Procedural Due Process

To state a claim for denial of procedural due process, Plaintiffs must plead and prove either that they were deprived of liberty or property as a result of an established state procedure that itself violates due process rights; or that the Defendants deprived them of liberty or property pursuant to a random and unauthorized act and available state remedies would not be adequate to redress the deprivation. Macene v. MJW, Inc., 951 F.2d 700, 706 (6th Cir. 1991); see Vicory v. Walton, 721 F.2d 1062, 1064 (6th Cir. 1983). Again, the basis of this claim is unclear from the Complaint. There is no indication that Plaintiffs are challenging an established state procedure, statute or local ordinance. It would therefore appear that a claim for denial of procedural due process would have to be based on a random and unauthorized act of a state or local government.

When a procedural due process claim is based upon alleged unauthorized acts of the Defendants, Plaintiffs must also plead and prove that state remedies for redressing the wrong are inadequate. Macene, 951 F.2d at 706; Vicory, 721 F.2d at 1064. The Supreme Court ruled that a person deprived of property through a random and unauthorized act by a state employee does not state a claim under the Due Process Clause merely by alleging the deprivation of property. River City Capital, L.P., 491 F.3d 301, 306 (6th Cir. 2007) (citing Parratt v. Taylor, 451 U.S. 527, 101 S. Ct. 1908, 68 L.Ed.2d 420 (1981)). The Constitution does not always require pre-deprivation process because it would be impossible or impracticable to provide a meaningful hearing before

all deprivations. Instead, the Constitution is satisfied by the provision of a meaningful post-deprivation process. Id. The State's action, therefore, is not "complete" in the sense of causing a constitutional injury "unless or until the State fails to provide an adequate post-deprivation remedy for the property loss." Hudson v. Palmer, 468 U.S. 517, 532, n. 12, 104 S. Ct. 3194, 82 L.Ed.2d 393, (1984); River City Capital, L.P., 491 F.3d at 306.

Plaintiff had an adequate state remedy available to him to get his property back if it was improperly seized. Ohio Revised Code § 2981.03 allows a person aggrieved by an alleged unlawful seizure of property to seek relief from the seizure by filing a motion in the appropriate court that shows the person's interest in the property, states why the seizure was unlawful, and requests the property's return. In fact, Plaintiff sought and obtained this relief through the Meigs County Common Pleas Court. This is the very type of post-deprivation process satisfying the Fourteenth Amendment's Procedural Due Process requirements and barring the relief Plaintiffs' claim. Moreover, Plaintiffs have not alleged this remedy to be inadequate. Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiffs' Fourteenth Amendment's Procedural Due Process claim.

If Plaintiffs are alleging in some general sense that they were denied due process because some state officials failed to comply with an unspecified executive order, statute, administrative rule or policy, the claim must be dismissed. Absent some indication of which order, statute, rule or policy was violated, it is impossible for the Court or the Defendants to determine whether Plaintiffs have an adequate state remedy available to them. The allegations supporting this claim are so attenuated that they deprive the Court of jurisdiction. Apple, 183 F.3d 479.

Finally, If Plaintiffs intended to assert another version of the Fourteenth Amendment's Takings Clause claim, the 6th Circuit has found the existence of an adequate state remedy in a

mandamus action. <u>River City Capital, L .P.</u>, 491 F.3d at 306–07. Plaintiffs have not alleged this remedy to be inadequate.

<u>Substantive Due Process</u>

Plaintiffs' substantive due process claim should also be dismissed. Due process claims of this nature involve official acts which cause a deprivation of a substantive fundamental right not explicitly protected by the Bill of Rights. <u>Mertik v. Blalock</u>, 983 F.2d 1353,1367 (6th Cir. 1993). In addition, under substantive due process, courts have invalidated laws or actions of government officials that "shock the conscience." See <u>United States v. Salerno</u>, 481 U.S. 739, 746, 107 S. Ct. 2095, 95 L.Ed.2d 697 (1987). These actions are unconstitutional regardless of the procedural protections provided. <u>Parate v. Isibor</u>, 868 F.2d 821, 832 (6th Cir. 1989). A citizen, however, does not suffer a constitutional deprivation every time he is subjected to some form of harassment by a government agent. <u>Id</u>. at 833. The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." <u>Id</u>.

If Plaintiffs are asserting a claim for denial of substantive due process based on the seizure of property, the claim must fail because Defendants had probable cause and were authorized by the search warrant to seize firearms and other contraband along with the nearly forty (40) pounds of marijuana seized from Plaintiffs' residence. (See *supra*). Obviously, the seizure of such property which Defendants were authorized to seize does not shock the conscience. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' Fourteenth Amendment substantive due process claim.

## **Fourteenth Amendment Equal Protection**

Plaintiffs also fail to assert a claim for denial of equal protection under the Fourteenth Amendment. The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. Rondigo, L.L. C. v. Township of Richmond, 641 F.3d 673, 681–682 (6th Cir. 2011); Radvansky v. City of Olmsted Falls, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. Scarbrough v. Morgan Cnty. Bd. of Educ., 470 F.3d 250, 260 (6th Cir. 2006). When disparate treatment is shown, the equal protection analysis is determined by the classification used by government decision-makers.

Plaintiffs do not allege disparate treatment. There is no suggestion in the pleading that any of the Defendants treated Plaintiffs differently than others who are "similarly situated" to them. To be considered "similarly situated," Plaintiffs must prove that all of the relevant aspects of their situation are nearly identical to those of the individuals they allege were treated more favorably. Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994). There are simply no allegations which plausibly suggest Plaintiffs were treated differently than others.

### 3. **Seizure of the Person**

Plaintiff Robert Six claims Defendants illegally seized his person in violation of the Fourth, Fifth[3], Sixth and Fourteenth Amendments. Plaintiff does not allege that his arrest was unlawful. Rather, his claim is based solely on Defendants holding Plaintiff in a law enforcement vehicle while they searched his residence. In other words, Plaintiff alleges holding him in the law enforcement vehicle while they searched his residence was excessive. It is not known how

---

[3] See footnote 2, *supra*.

this could possibly violate Plaintiffs' constitutional rights. Plaintiff's bare allegation that it was hot in the back seat of the vehicle does not rise to the level of a constitutional violation.

### Fourth and Fourteenth Amendments

A. **The doctrine of Heck v. Humphrey bars Plaintiff from challenging his arrest.**

To the extent Plaintiff alleges that his arrest was unlawful, Plaintiff's constitutional claims are barred by the doctrine of <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). The Fourth Amendment establishes the right to be free from unreasonable searches and seizures. U.S. Const. Amend. IV. On the date in question, Plaintiff was arrested and charged with felony drug possession. (R. Six Dep. Tr. at 142, See also Exhibit E, attached). Plaintiff was later indicted on Aggravated Drug Possession, a felony. (Exhibit F, attached). Plaintiff ultimately pled guilty to a lesser charge. (R. Six Dep. Ex. R). Under the <u>Heck</u> doctrine, a state prisoner may not file a § 1983 suit for damages or equitable relief challenging his conviction or sentence if a ruling on his claim would render the conviction or sentence invalid, until and unless the conviction or sentence has been reversed on direct appeal, expunged by Executive Order, declared invalid by a state tribunal, or has been called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. <u>Heck</u>, 512 U.S. at 486–87; <u>Wilkinson v. Dotson</u>, 544 U.S. 74, 81–82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration."). Here, a finding that Defendants unlawfully arrested Plaintiff would render his guilty plea invalid. In short, if Plaintiff is alleging that Defendants did not have

probable cause to arrest him, his claim is barred by the doctrine established in <u>Heck</u>. Defendants are entitled to summary judgment.

B. **<u>Holding Plaintiff in a law enforcement vehicle after his arrest, while his residence was searched, was not unreasonable.</u>**

Plaintiff Robert Six alleges that holding him in a law enforcement vehicle while his residence was searched was unreasonable and excessive. (Complaint at ¶ 178, brought as "illegal seizure of the person"). The constitutional protections to which an individual is entitled in an excessive force claim "depends on the status of the plaintiff at the time of the incident, whether free citizen, convicted prisoner, or something in between." <u>Phelps v. Coy</u>, 286 F.3d 295, 299 (6th Cir. 2002) (quoting <u>Gravely v. Madden</u>, 142 F.3d 345, 348–49 (6th Cir. 1998)). Free citizens may bring excessive force claims under the Fourth Amendment, wherein a court must utilize a reasonableness standard. <u>Leary v. Livingston County</u>, 528 F.3d 438, 443 (6th Cir. 2008) (citing <u>Graham v. Connor</u>, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"). Pretrial detainees awaiting sentencing are protected from excessive force under the Fourteenth Amendment's Due Process clause, which protects a pretrial detainee from excessive force that amounts to punishment. <u>Id</u>. (citing <u>Graham</u>, 490 U.S. at 395 n. 10; <u>United States v. Budd</u>, 496 F.3d 517, 530 (6th Cir.2007)); <u>Shreve v. Franklin County, Ohio,</u> 2013 WL 30056, 5 (S.D. Ohio, 2013).

Plaintiff pled violations of both the Fourth and Fourteenth Amendments. (See Complaint at ¶ 178). Plaintiff was under arrest at the time he was held in the law enforcement vehicle. (See Exhibit E, Attached). However, Plaintiff had not been booked into custody at the Meigs County Jail. Therefore, Plaintiff was an arrestee, but not yet a pre-trial detainee at the time. Accordingly, Plaintiff's claim is analyzed under the Fourth Amendment.

Claims regarding a police officer's use of excessive force in the course of an arrest or other seizure are governed by the Fourth Amendment. See Phelps v. Coy, 286 F.3d 295, 299 (6th Cir. 2002) (citing Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989)). The Fourth Amendment requires that an officer's use of force be objectively reasonable, and courts must balance the consequences to the individual against the government's interest in effecting the seizure. See Graham, 490 U.S. at 396. This standard contains a built-in measure of deference to the officer's judgment about the level of force necessary in light of the circumstances of the particular case. See Id.

In determining whether there has been a violation of the Fourth Amendment, this Court does not focus on the extent of the injury inflicted, but whether an officer subjects an arrestee to "gratuitous violence." Miller v. Sanilac Cnty., 606 F.3d 240, 252–54 (6th Cir. 2010). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. at 396. The question of whether the force used by the officer was excessive turns on the objective reasonableness of the officer's conduct under the circumstances. Id. at 397. The Supreme Court has provided three factors for courts to consider in evaluating an excessive force claim: (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the safety of officers or others; and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight. Id. at 396; Darrah v. City of Oak Park, 255 F.3d 301, 307 (6th Cir. 2001). These factors must be considered from the perspective of a reasonable officer on the scene, who is often forced to make quick judgments under rapidly evolving and tense circumstances. Graham, 490 U.S. at 397.

As a threshold matter, Plaintiff has not identified which Defendant, if any, placed him in the law enforcement vehicle and held him there while Defendants searched his residence.

Plaintiff admits that he does not know who placed him into the vehicle. (R. Six Dep. Tr. at 95). Section 1983 requires an actual connection between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978); Rizzo v. Goode, 423 U.S. 362, 96 S. Ct. 598, 46 L.Ed.2d 561 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978); Williams v. City of Euclid, 2013 WL 2456373, 2 (N.D. Ohio, 2013). Here, Plaintiff has offered no evidence that Defendants Beegle, Adam Smith, Rick Smith, Gilkey, Trussell or Rhodes placed Plaintiff in the law enforcement vehicle and held him there while Defendants searched his residence. Therefore, none of these Defendants can be liable on plaintiff's excessive force, aka "unlawful seizure of Plaintiff's person" claim.

Even if Plaintiff's claim could proceed against one or more of these Defendants, Plaintiff cannot demonstrate that he was subjected to unreasonable force by being held in a law enforcement vehicle while officers searched his residence. At the completion of the search, Plaintiff was transported to the Meigs County Jail and processed into custody. (R. Six Dep. Tr. at 123). On its face, there is nothing at all unreasonable about these actions.

Plaintiffs' allegation that it was hot in the back of the cruiser and that he passed out from the heat is not supported by the evidence. At times, other officers sat in the back of the cruiser with Plaintiff and did not complain of the heat. (Peters Dep. Tr. at 54-55). BCI Agent Jenkins testified that it was cool that day. (Jenkins Dep. Tr. at 45). Further, the Farmers' Almanac demonstrates that August 5, 2009 was not a particularly hot day in Meigs County, Ohio. (Exhibit

G, attached)   The high temperature was 75 degrees. (Id.). Local weather reports that day indicate that during the time Plaintiff was held in the cruiser, the temperature was between approximately 71 and 75 degrees. (Exhibit H, Attached). An officer even provided Plaintiff a bottle of water. (R. Six Dep. Tr. at 111).   Moreover, Plaintiff testified that he was not handcuffed while held in the cruiser. (R. Six. Dep. Tr. at 110).   If Plaintiff was too hot, he could have attempted to roll down a window, open the door or get someone's attention. Plaintiff did nothing. (R. Six. Dep. Tr. at 110).

Plaintiff never complained to anyone about the conditions inside the cruiser at the time. (R. Six Dep. Tr. at 125).   Plaintiff did not ask to see a doctor or nurse when he was booked into the Meigs County Jail that evening. (R. Six. Dep. Tr. at 129). Plaintiff completed a medical questionnaire and did not note any medical issues related to being held in the cruiser. (R. Six Dep. Ex. D).   More importantly, Plaintiff now admits he was not injured from being held in the law enforcement vehicle. (R. Six Dep. Tr. at 136).   Simply put, there is no evidence to support Plaintiff's excessive force or illegal seizure of the person claim. Accordingly, Defendants are entitled to summary judgment.

### 4. 42 U.S.C. § 1983 Conspiracy Claims

Finally, Plaintiffs cannot establish a claim for civil conspiracy under 42 U.S.C. § 1983. A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved; however, Plaintiffs must show that there was a single plan, that the alleged co-conspirators shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant. Hooks v. Hooks, 771 F.2d 935. 943–44 (6th Cir. 1985). Unlike conspiracy claims under § 1985, Plaintiffs

need not prove class-based discrimination to sustain a claim for civil conspiracy. Nevertheless, Plaintiffs still must plead civil conspiracy claims with some degree of specificity. Gutierrez v. Lynch, 826 F.2d 1534, 1538 (6th Cir. 1987). Vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983. Id.

Plaintiffs fail to set forth factual allegations to plausibly suggest the existence of any conspiracy. They do not allege a single plan, nor do they include facts that demonstrate each of the named Defendants shared in a single objective or committed an overt act in furtherance of the conspiracy. The claim is stated solely as a legal conclusion which is not sufficient to state a civil conspiracy claim.  To the extent the claim is properly pled, the claim fails as not constitutional violation occurred. Defendants are therefore entitled to summary judgment.

### 5. __Defendants Beegle, Gilkey and Trussell Should be Dismissed because they did not Seize Plaintiff's Property or his Person.__

Defendants Beegle and Gilkey were present at the Six residence on August 5, 2009; however, neither was involved with Plaintiff Robert Six's arrest or seizing the Six's property. Both Defendants Beegle and Gilkey simply observed the operation that day. (Beegle Dep. Tr. at 12-13; Gilkey Dep. Tr. at 17, 20-21).  Defendant Beegle was the Meigs County Sheriff at all times relevant. He did not plan or participate in the raid of Plaintiffs' residence. His involvement was limited in this matter. (Beegle Dep. Tr. at 10-16).  He brought the law enforcement officers' dinner during the operation. (Beegle Dep. Tr. at 14).  Beyond that, Defendant Beegle mostly observed parts of the search and seizure of property out of curiosity. (Beegle Dep. Tr. at 12-13). Defendant Gilkey's involvement was mostly standing outside the residence and helping load seized items into vehicles for transport back to the Sheriff's Office. (Gilkey Dep. Tr. at 17, 20-21, 30).  Neither Defendants Beegle nor Gilkey were involved in seizing either Mr. Six or his property. Neither was involved in transporting or unloading the property back at the Sheriff's

Office and neither was involved with returning the property to Plaintiff in April 11, 2011. (Beegle Dep. Tr. at 25, 36-37; Gilkey Dep. Tr. at 31, 33).

Plaintiff has not brought an official capacity claim against Robert Beegle, or any other Defendant. Simply being the Meigs County Sheriff is not enough to hold Mr. Beegle individually responsible for any of Plaintiffs' constitutional claims.

Defendant Trussell was not involved in any of the actions complained of by Plaintiff. He did not participate in the operations leading to Plaintiff's Six's arrest or the seizure of any of the Six's property. (Trussell Dep. Tr. at 5). His only involvement in this case was that he was present at the Meigs County Sheriff's Office on April 11, 2011 when Plaintiff's property was returned to him. He stopped in to say hello to Mr. Jagers, who he knew. (Trussell Dep. Tr. at 10). Even then, his only involvement was carrying some of Mr. Six's property from the evidence room to Mr. Six's vehicle. (Trussell Dep. Tr. at 11).

In short, Defendants Beegle, Gilkey and Trussell were not involved with the acts complained of by Plaintiffs. As such, they could not have violated their constitutional rights. These three Defendants should therefore be dismissed outright from this matter, regardless of how the Court rules on Defendants' qualified immunity defense.

### III. <u>Conclusion</u>

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party, which in this case is the plaintiff,

"cannot rest on [his] pleadings," and must show the Court that "there is a genuine issue for trial." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997). In considering a motion for summary judgment the court must construe the facts in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

When the question is one of qualified immunity, however, the analysis is somewhat altered. In ruling on a motion for summary judgment based on the defense of qualified immunity, the existence of a disputed, material fact does not necessarily preclude summary judgment. Even if there is a material fact in dispute, summary judgment is appropriate if the Court finds that— viewing the facts in the light most favorable to the plaintiff—the plaintiff has failed to establish a violation of clearly established constitutional law. Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Dickerson v. McClellan, 101 F.3d 1151, 1158 (6th Cir. 1996).

Here, Plaintiffs cannot establish that Defendants violated a clearly established constitutional right. Therefore, qualified immunity bars all of Plaintiffs' constitutional claims and Defendants are entitled to summary judgment on each of Plaintiff's claims.

Respectfully submitted,


s/ Paul M. Bernhart
Cheri B. Hass  (0065157)
Paul M. Bernhart (0079543)
**FISHEL HASS KIM ALBRECHT LLP**
400 S. Fifth Street, Suite 200
Columbus, OH  43215
(614) 221-1216 - Telephone
(614) 221-8769 - Fax
chass@fishelhass.com
pbernhart@fishelhass.com

*Attorneys for Defendants Beegle, Adam Smith,*
*Rick Smith, William Gilkey, Scott Trussell*
*and Brian Rhodes*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing Motion for Summary Judgment of Defendants Robert Beegle, Adam Smith, Rick Smith, William Gilkey, Scott Trussell And Brian Rhodes was served upon all counsel of record through the Court's electronic filing system this 12th day of July, 2013.

s/ Paul M. Bernhart
Paul M. Bernhart (0079543)

*Attorney for Defendants Robert Beegle, Adam Smith, Rick Smith, William Gilkey Scott Trussell and Brian Rhodes*

CORSA/Meigs/Six/Filings/7-13MSJ