IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Robert B. Six | : | |
| 26225 Rutherford Rd. | | Case No. 2:11-CV-00698 |
| Albany, OH 45710, | : | |
| | | Judge James L. Graham |
| and | : | |
| | | Magistrate Judge Abel |
| Bobbi G. Six | : | |
| 26225 Rutherford Rd. | | |
| Albany, OH 45710 | : | |
| | | |
| Plaintiffs, | : | |
| | | |
| vs. | : | |
| | | |
| Robert Beegle, et al. | : | |
| | | |
| Defendants. | : | |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I        Summary Judgment Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

         *Hamilton v. Eleby*, et al., Case No. 1:06cv409, (S.D. Ohio, W.D. Oct. 15, 2008),
*unreported, attached.*

II       Statement of Facts.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.     The seizure of the Plaintiffs' personal property, including the collector's item firearms
         and the World War II artifacts was in violation of the Fourth Amendment to the United
         States Constitution.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..7


         A.       The seizure of Plaintiffs' old gun collection, World War II collector's items such
                  as flags, and other non-drug related personal property were not authorized by the
                  search warrant or any exception to the warrant requirement and therefore their
                  seizure violated the Fourth Amendment.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          *United States v. Garcia*, 496 F.3d 495, 508 (6th Cir. 2007)
         *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301 (1990)
         *Soldal v. Cook County, IL*, 506 U.S. 56, 66, 113 S.Ct. 538, 546 (1992)
         United States Constitution, Amendment IV
         *Groh v. Ramirez,* 540 U.S. 551, 124 S.Ct. 1284 (2004)
         *Arizona v. Hicks,* 480 U.S. 321, 326-327, 107 S.Ct. 1149, 1153-1154 (1987)
         *United States v. McLevain,* 310 F.3d 434, 438 (6th Cir.2002)

         B.       The Plaintiffs' gun collection and Word War II collector's items were not subject
                  to seizure under any exception to the warrant requirement... . . . . . . . . . . . . . . .13

         *Groh v. Ramirez,* 540 U.S. 551, 124 S.Ct. 1284 (2004)

                  1.       The "exigent circumstances" or "emergency" exception to the warrant
                           requirement did not allow seizure of the personal property.. . . . . . . . . . ..13

         *Georgia v. Randloph*, 547 U.S. 103, 116-117, 126 S.Ct. 1515, 1524-1525 (2006)

                  2.       The "plain view" exception to the warrant requirement does not authorize
                           the seizure of the Plaintiffs' personal property.. . . . . . . . . . . . . . . . . . . . . .14

         *United States v. Garcia*, 496 F.3d 495, 508 (6th Cir. 2007) (citing *Horton v. California*,

496 U.S. 128, 136-137 (1990)
*United States v. McLevain*, 310 F.3d 434, 438-439 (6th Cir. 2002)

IV.     Defendants' own evidence demonstrates that three of the firearms that were seized were
        not returned, and thus there is no genuine issue of fact with regard to these three
        weapons.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... .15

*Reitz v. County of Bucks*, 125 F.3d 139,  (3rd Cir. 1997)
*Soldal v. Cook County, Ill.*, 506 U.S. 56, 61, 113 S.Ct. 538, 543 (1992)

V.      Conclusion

<u>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**</u>

Now come Plaintiffs by and through counsel and pursuant to Civ.R. 56 respectfully

request that the Court grant summary judgment in their favor and against Defendant Robert

Adam Smith on the First Claim of the Amended Complaint regarding three of Plaintiff Robert

Six's collector's item firearms for failing to return those firearms, and against all Defendants on

the First Claim of the Amended Complaint for illegally seizing the firearms and World War II

collector's items.  The reasons for this motion are set forth more fully in the following

memorandum.

<u>**MEMORANDUM**</u>

**I.      Summary Judgment Standard**

The summary judgment standard has been stated as follows:

> Summary judgment is appropriate "if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with
> the affidavits, if any, show that there is no genuine issue as to any
> material fact and that the moving party is entitled to a judgment as
> a matter of law."<u>Fed.R.Civ.P. 56©</u>. A court must view the
> evidence and draw all reasonable inferences in favor of the
> nonmoving party. *See  <u>Matsushita Elec. Indus. Co. v. Zenith Radio
> Corp., 475 U.S. 574, 587, (1986)</u>*. The moving party bears the

2

initial burden of showing the absence of a genuine issue of material fact, but then the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Matsushita,* 475 U.S. at 587. However, the nonmoving party may not rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex,* 477 U .S. at 324.

*Hamilton v. Eleby*, et al., Case No. 1:06cv409, (S.D. Ohio, W.D. Oct. 15, 2008), *unreported*.


## II.      Statement of Facts

Defendants executed a search warrant at the home of Plaintiffs on or about August 5th , 2009 after a controlled delivery of marijuana to the Six's residence.  See Exhibit 1 (Search Warrant and return).  The property that was to be searched for and seized according to the search warrant was limited to 1) Marijuana and other drugs; 2) instruments used to consume marijuana; 3) tools or other things used in the cultivation, preparation/processing or distribution of marijuana or other illegal drugs; 4) records evidencing the  cultivation, preparation/processing, distribution or sale of marijuana; 5) proceeds from the cultivation, preparation/processing, or sale of marijuana or other drugs; 6) "along with any related evidence". *Id*.

The search warrant did not state that firearms, World War II collector's items, or Mr. Six's knives were to be seized.

It is undisputed that during the execution of the search warrant Defendants seized Plaintiff Robert Six's entire collection of old guns (which included over 300 firearms), along with other World War II collector's items having nothing to do with drugs.  All Defendants have admitted participating in the seizure of the personal property in one way or another, whether by actually searching for and seizing the weapons, loading them onto trucks, or providing backup

3

for those performing those tasks. Defendants listed some of these World War II collector's items

on the Columbus Division of Police Narcotics Bureau Evidence Inventory (hereinafter "NB

Inventory"), attached hereto as Exhibit 3.[1] See Exhibit 3 at the following numbers: 88-A ("2

NAZI SWORDS"), 89-A ("MISC. BAYONETT'S" [sic]); 90-A ("NAZI SWORD"); 91-A

("MISC. KNIVES, 2 NAZI DISPLAY CASES"); 100-A ("MISC. DOCUMENTS"); 101-A

("MISC. NAZI PARA"). The Property Supplement to the Meigs County Sheriff's Office Ohio

Uniform Incident Report (attached hereto as Exhibit 4 and referred to hereinafter as the MCSO

Property Supplement) also included a list of seized items, which curiously does not match the

NB Inventory in many instances. See Exhibit 4 hereto. Both lists were vague and inadequate to

identify what particular World War II collector's items Defendants seized, as is apparent from the

quotations above from the NB Inventory, such as "MISC. NAZI PARA"). See also Exhibit 4 at

bates page 84, where the MCSO Property Supplement lists only "MISC NAZI

PARAPHERNALIA", without any further detail.

The prosecution sought the criminal forfeiture of all of the firearms that were seized, and

in ruling on Mr. Six's motion to dismiss the criminal forfeiture specification the Meigs County

Common Pleas Court held that none of the weapons were subject to forfeiture and ordered the

return of all of the weapons. See Exhibit 2 (Judgment Entry filed stamped March 4th, 2011) at p.

10-11. The Court found that:

> There was no showing that any of these firearms or the ammunition was used to
> commit or attempt to commit the offense of aggravated possession of marijuana.
> There was no showing of the extent to which these items furthered the

---

[1] Note that Plaintiffs assert that Defendants seized items that were not inventoried by
Defendants, but the Plaintiffs are only seeking summary judgment with regard to items that the
Defendants inventoried. As can easily be seen on Exhibit 3

commission of or attempt to commit the offense of aggravated possession of marijuana. There was no showing that these items were used for the primary purpose of committing or attempting to commit the alleged offense. The Court finds that this offense could have been committed without the presence of these items. Based on the above, the Court finds Defendant's motion to dismiss the forfeiture specification is well taken.

*Id*.

After being ordered to do so by the Meigs County Common Pleas Court, Defendants finally returned some of the firearms on April 11th, 2011, but not all of them were returned, even according to the Defendants' own documentation. See Exhibit 5 (Meigs County Sheriff's Office return list). When one compares Defendants' own lists of weapons seized (Exhibits 3 and 4) to the Defendants' own list of returned firearms one finds that several items listed as having been seized do not appear on the Defendants' list of allegedly returned firearms.[2] See Exhibits 3 and 4 (the Narcotics Bureau Evidence Inventory (hereinafter "NB inventory") and the Meigs County Sheriff's Office Property Supplement (hereinafter "MCSO property supplement" respectively)); See Exhibit 5 (Meigs County Sheriff's Office return list) The following firearms were on the Defendants' inventory documents, but were not on their return list:

> **Astra pistol, serial # 613684** (this is #38B on the NB inventory, and appears on the page that is bates numbered in the MCSO property supplement, but does not appear on the return list)
> **Selbstalde Pistol, serial # 52585** (this is #4-A on the NB inventory, and appears on the page that is bates numbered 86 in the MCSO property supplement, but does not appear on the return list.)
> **Itica 1911, serial # 1374** (this appears on the page that is bates numbered 95 in the MCSO property supplement, but does not appear on the return list. Note that a second Itica 1911 firearm (serial #101374) is listed as #70-A on the NB inventory list. Note that

---

[2] It should be noted that Plaintiffs disagree with both the Defendants' inventory and their returned weapons list. However, in order to focus this motion for summary judgment on issues for which there are clearly no genuine issues of material fact, Plaintiffs are focusing their statement of facts and argument to the Defendants' own evidence (e.g. Exhibits 3, 4, and 5).

Mr. Six had two Itica 1911's which were serial numbers #1374 and #100374. Plaintiffs believe that Defendants incorrectly wrote the serial number "101374" for the Itica 1911 that is actually serial #100374. Steve Jagers, who made a list of the returned firearms indicated that one "Ithaka 1911" serial #100374 was returned, and Plaintiffs agree that the Itica 1911 serial #100374 was returned, but the Itica serial #1374 is a second firearm that was not returned, and does not appear on the Defendants' return list.) See Exhibit 6 (Steve Jagers' list of returned firearms).

*Id*.

The affidavit to the warrant was signed by Defendant Robert A. Smith (aka and hereinafter "Adam Smith"). See Exhibit 1 (Search Warrant). Defendant Adam Smith also testified that he is the officer in charge of the evidence room for the Meigs County Sheriff's Office. See e.g. Deposition of Robert A. Smith of April 12th, 2013 at p. 11, ln. 20-23 ("A.

I'm the sole person that has custody of all the evidence in the Meigs County Sheriff's Office, the only keys. Not all the evidence, just the keys to that evidence room.") See *Id*. at Exhibit 1 ("I deputy Robert Smith take control of the Evidence Room as of 9-13-2006 . . ."). He further testified that he was the only one with keys during the time the Plaintiffs' property was held there. See *id*. at p. 13, ln. 13 - 18:

> Q.     Okay.
>        Now in the time frame between August 5th, 2009 and April 11th, 2011 were you
>        the only person - -
> A.     Correct.
> Q.     - - who had access to those keys?
> A.     Correct.

*Id*. It is also undisputed that he was present for and oversaw the return of firearms to Plaintiff Robert Six from the Meigs County Sheriff's Office's evidence room. See *id*. at p. 90 - 112.

Adam Smith admitted that he saw no evidence of the sale of marijuana during the

6

execution of the search warrant. See Deposition of Robert A. Smith of April 12th, 2013 at p. 87-

87, ln 24 - p 88 ln. 3("Q.     You never did see any evidence of the sale of marijuana.  Is that

fair to say?     A.     No. He wasn't charged with trafficking, I believe you said.") Mr. Smith

further testified that he was the person with custody of the Meigs County Sheriff Office's

evidence room and the only one with keys during the time when the Plaintiffs' property was

being kept there.  See e.g. *id*. at p. 11, ln. 20-23 ("A.     I'm the sole person that has custody

of all the evidence in the Meigs County Sheriff's Office, the only keys.  Not all the evidence, just

the keys to that evidence room."); see *id*. at Exhibit 1 ("I deputy Robert Smith take control of the

Evidence Room as of 9-13-2006 . . .").  He has further admitted that noone else would have had

an opportunity to make off with the weapons.  See *id*. at p. 102 - 103, ln. 23 - 5 ("Q.     And

so, then, you would have been the only person with the opportunity to have removed anything

from that Evidence Room that belonged to Mr. Six?     A.     Yeah.  Unless another officer

was standing beside me and walked out with an armload of guns.")

### III. The seizure of the Plaintiffs' personal property, including the collector's item firearms and the World War II artifacts was in violation of the Fourth Amendment to the United States Constitution.

#### A. The seizure of Plaintiffs' old gun collection, World War II collector's items such as flags, and other non-drug related personal property were not authorized by the search warrant or any exception to the warrant requirement and therefore their seizure violated the Fourth Amendment.

Plaintiff addresses first the issue of the constitutionality of the initial *seizure* of Plaintiffs'

gun collection, and other non-drug related personal property.  It is well established that a warrant

is required before law enforcement officers may seize an item, unless an exception to the warrant

requirement applies. See e.g. *United States v. Garcia*, 496 F.3d 495, 508 (6th Cir. 2007):

Unless an exception applies, a warrant is generally required to permit law enforcement officers to search a place or seize an item. *United States v. McLevain,* 310 F.3d 434, 438 (6th Cir.2002). The warrant in this case did not authorize the search for or seizure of documents or drug paraphernalia, and the officers therefore cannot rely on the warrant to authorize their seizure of the documents.

*Id*. See generally *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301 (1990):

"It is important to distinguish 'plain view,' as used in *Coolidge* to justify *seizure* of an object, from an officer's mere observation of an item left in plain view. Whereas the latter generally involves no Fourth Amendment search, see *infra,* at 740 [ 103 S.Ct., at 1542 ]; *Katz v. United States,* 389 U.S. 347 [88 S.Ct. 507, 19 L.Ed.2d 576] (1967), the former generally does implicate the Amendment's limitations upon seizures of personal property." *Texas v. Brown,* 460 U.S. 730, 738, n. 4, 103 S.Ct. 1535, 1541, n. 4, 75 L.Ed.2d 502 (1983) (opinion of REHNQUIST, J.).

*Id*. at p. 134, footnote 5 (emphasis in the original). It should also be noted that no

invasion of a privacy interest is required in order to make a warrantless seizure of property a

violation of the Fourth Amendment. See *Soldal v. Cook County, IL*, 506 U.S. 56, 66, 113 S.Ct.

538, 546 (1992):

If the boundaries of the Fourth Amendment were defined exclusively by rights of privacy, "plain view" seizures would not implicate that constitutional provision at all. Yet, far from being automatically upheld, "plain view" seizures have been scrupulously subjected to Fourth Amendment inquiry. Thus, in the absence of consent or a warrant permitting the seizure of the items in question, such seizures can be justified only if they meet the probable-cause standard, *Arizona v. Hicks,* 480 U.S. 321, 326-327, 107 S.Ct. 1149, 1153-1154, 94 L.Ed.2d 347 (1987),[FN9] and if they are unaccompanied by unlawful trespass, *Horton,* 496 U.S., at 136-137, 110 S.Ct., at 2307-2308.[FN10] That is because, the absence of a privacy interest notwithstanding, "[a] seizure of the article ... would obviously invade the owner's possessory interest." *Id.,* at 134, 110 S.Ct., at 2306; see also *Brown, supra,* 460 U.S., at 739, 103 S.Ct., at 1541 (opinion of REHNQUIST, J.).

*Id*. The determination of whether the facts establish an unconstitutional seizure is a

question of law. *United States v. Garrido-Santana*, 360 F.3d 565, 570 (6th Cir. 2004). Further, in

*Horton v. California*, 496 U.S. 128, 140 (1990), the Supreme Court held that "[i]f the scope of

the search exceeds that permitted by the terms of a validly issued warrant or the character of the

relevant exception from the warrant requirement, ***the subsequent seizure is unconstitutional***

***without more.***"  *Id*. (emphasis added).

It is also well-established that a search warrant must be particularized as to what items are

to be seized and further that the *officer himself* has a duty to ensure that the warrant is

particularized as to the items to be seized before executing it.  See United States Constitution,

Amendment IV:

> The right of the people to be secure in their persons, houses, papers, and
> effects, against unreasonable searches and seizures, shall not be violated, and no
> Warrants shall issue, but upon probable cause, supported by Oath or affirmation,
> and ***particularly describing*** the place to be searched, and ***the persons or things to***
> ***be seized***.

*Id*. (emphasis added);  See *Groh v. Ramirez,* 540 U.S. 551, 124 S.Ct. 1284 (2004) at

Syllabus paragraph 2:

> 2. Petitioner is not entitled to qualified immunity despite the constitutional
> violation because "it would be clear to a reasonable officer that his conduct was
> unlawful in the situation he confronted," <u>*Saucier v. Katz,* 533 U.S. 194, 202, 121</u>
> <u>S.Ct. 2151, 150 L.Ed.2d 272.</u> ***Given that the particularity requirement is stated***
> ***in the Constitution's text, no reasonable officer could believe that a warrant***
> ***that did not comply with that requirement was valid.***

*Id*. (emphasis added).  In the same vein, the officer not only has a duty to ensure that the

warrant lists particular items to be seized before starting his search, but that once the search is

underway it is lawfully conducted.  See *id*. at 563:

> It is incumbent on the officer executing a search warrant to ensure the search is
> lawfully authorized ***and lawfully conducted.***<u>[FN6]</u> Because petitioner did not have in
> his possession a warrant particularly describing the things he intended to seize,
> proceeding with the search was clearly "unreasonable" under the Fourth
> Amendment. The Court of Appeals correctly held that the search was
> unconstitutional.

*Id*.

In the case at bar, it is clear that Mr. Six's old gun collection and World War II collector's items were not subject to seizure pursuant to the search warrant. Neither firearms nor World War II relics are listed in the search warrant. See Exhibit 1 passim. While the search warrant authorized the seizure of proceeds of the sale of drugs, there was no evidence that the guns were proceeds of the sale of drugs, as Defendant Adam Smith, the preparer of the Affidavit for the search warrant has admitted. See Deposition of Robert A. Smith of April 12th, 2013 at p. 87-87, ln 24 - p 88 ln. 3. It is undisputed that Mr. Six was only indicted for possession of marijuana, not for the sale of marijuana. There was no evidence that he ever sold any marijuana at all in order to have any proceeds with which to buy anything. The mere presence of the old gun collection in the house did not provide the Defendants with probable cause to believe the weapons were proceeds of the sale of marijuana. If that were the case then all personal property in the same house as an illegal drug would be subject to seizure as a proceed, the particularity requirement contained in the Fourth Amendment would be rendered meaningless, and the warrant would become an unconstitutional "general warrant". *See e.g. Groh v. Ramirez,* 540 U.S. 551, 124 S.Ct. 1284 (2004) at Syllabus paragraph 2 ("Given that the particularity requirement is stated in the Constitution's text, no reasonable officer could believe that a warrant that did not comply with that requirement was valid." *Id*.); *Horton*, supra 496 U.S. 128, 140,110 S.Ct. 2301, 2310 at footnote 10 (1990) (quoting *Maryland v. Garrison,* 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987)):

> "The Warrant Clause of the Fourth Amendment categorically prohibits the
> issuance of any warrant except one 'particularly describing the place to be

searched and the persons or things to be seized.' The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas *and things* for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." <u>Maryland v. Garrison,</u> <u>480 U.S., at 84, 107 S.Ct., at 1016.</u>

*Id*. (emphasis added).

Nor did the vague catchall statement in the search warrant "along with any related evidence" justify the seizure of the old gun collection and World War II relics.  The Meigs County Common Pleas Court explicitly found in its Judgment Entry of March 4th, 2011 that there was no showing of any connection between the firearms and possession of the marijuana. See Exhibit 2 Judgment Entry dated March 4th, 2011 at p. 10-11:

> There was no showing that any of these firearms or the ammunition was used to commit or attempt to commit the offense of aggravated possession of marijuana. There was no showing of the extent to which these items furthered the commission of or attempt to commit the offense of aggravated possession of marijuana. There was no showing that these items were used for the primary purpose of committing or attempting to commit the alleged offense.  The Court finds that this offense could have been committed without the presence of these items.  Based on the above, the Court finds Defendant's motion to dismiss the forfeiture specification is well taken.

*Id*. While the Plaintiffs do not assert that the ruling of the Meigs County Common Pleas Court has issue or claim preclusive effect, it is very strong evidence demonstrating that the personal property was not "related evidence" subject to seizure.  Even under the entirely vague final phrase of the search warrant (i.e. "any other related evidence") there was no evidence to suggest that the collector's item firearms were somehow related to the marijuana, apart from their mere presence among the many items of personal property in the house.  There is no genuine issue of material fact as to whether the search warrant authorized the seizure of weapons.

11

Obviously, World War II collectors items such as flags, swords, and knives have nothing to do with marijuana possession either. Because the search warrant did not authorize the seizure of the firearms and World War II relics, and because there was no evidence that the firearms and World War II items were the proceeds of the sale of marijuana or in any way related to the marijuana they were not subject to seizure pursuant to the warrant. See United States Constitution, Amendment IV; *Groh v. Ramirez*, supra; *State v. Garcia*, supra ("The warrant in this case did not authorize the search for or seizure of documents or drug paraphernalia, and the officers therefore cannot rely on the warrant to authorize their seizure of the documents." *Id* at p. 508.)

Clearly, there is no genuine issue of material fact that the search warrant did not describe with particularity any of the firearms or World War II collector's items, and that there was no evidence to suggest that those items were in any way related to the marijuana. Thus, in light of the explicit language of the Fourth Amendment, and the well established case law from the Supreme Court and Sixth Circuit Court of Appeals requiring a warrant particularly describing the things to be seized there is no genuine issue of material fact that the search warrant did not authorize the seizure of the firearms or World War II collector's items. See e.g. United States Constitution, Amendment IV; *Arizona v. Hicks,* 480 U.S. 321, 326-327, 107 S.Ct. 1149, 1153-1154, 94 L.Ed.2d 347 (1987); *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301 (1990), *supra*; *Soldal v. Cook County, IL*, 506 U.S. 56, 66, 113 S.Ct. 538, 546 (1992), *supra*; *United States v. McLevain,* 310 F.3d 434, 438 (6th Cir.2002); *Groh v. Ramirez,* 540 U.S. 551, 124 S.Ct. 1284 (2004) at Syllabus paragraph 2; *United States v. Garcia*, 496 F.3d 495, 508 (6th Cir. 2007), *supra*.

**B.** **The Plaintiffs' gun collection and Word War II collector's items were not subject to seizure under any exception to the warrant requirement.**

Because the Plaintiffs' gun collection and World War II relics that were seized were not described with particularity in the search warrant, Defendants cannot rely on the warrant to authorize their seizure of those items. See e.g. *Groh*, supra. Thus, the seizures could only be justified under an exception to the search warrant requirement. No such exception applies to the case at bar.

**1.** **The "exigent circumstances" or "emergency" exception to the warrant requirement did not allow seizure of the personal property.**

One exception to the warrant requirement for searches and seizures is the exigent circumstances exception. The Supreme Court listed some of the common exigencies that may justify a warrantless search or seizure in *Georgia v. Randloph*, 547 U.S. 103, 116-117, 126 S.Ct. 1515, 1524-1525 (2006):

> Sometimes, of course, the very exchange of information like this in front of the objecting inhabitant may render consent irrelevant by creating an exigency that justifies immediate action on the police's part; if the objecting tenant cannot be incapacitated from destroying easily disposable evidence during the time required to get a warrant, see *Illinois v. McArthur,* 531 U.S. 326, 331-332, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001) (denying suspect access to his trailer home while police applied for a search warrant), a fairly perceived need to act on the spot to preserve evidence may justify entry and search under the exigent circumstances exception to the warrant requirement, cf. *Schmerber v. California,* 384 U.S. 757, 770-771, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (warrantless search permitted when "the delay necessary to obtain a warrant ... threatened the destruction of evidence" (internal quotation marks omitted)).
>
> Additional exigent circumstances might justify warrantless searches. See, *e.g., Warden, Md. Penitentiary v. Hayden,* 387 U.S. 294, 298, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (hot pursuit); *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (protecting the safety of the police officers); *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) (imminent

destruction to building); *Johnson v. United States,* 333 U.S. 10, 15, 68 S.Ct. 367, 92 L.Ed. 436 (1948) (likelihood that suspect will imminently flee).

*Id*. Nothing remotely approaching any of these situations was present in the case at bar. It is undisputed that numerous officers participated on the raid at the Plaintiffs' residence. It is undisputed that Plaintiff Robert Six was the only person present when Defendants began the raid and he was quickly detained without incident. Plaintiff was thereafter detained in a cruiser during the rest of the hours-long search that took place. Therefore, Mr. Six obviously had no opportunity to destroy any evidence, to flee, or to present a safety risk to officers while the officers searched and seized.

The case at bar is indeed the antithesis of an "exigent circumstances" case. This was a preplanned event in which the officers had overwhelming force present, met no resistance, and in which there was no risk that evidence would be destroyed if a few of the many officers occupied themselves with preparing a new warrant or warrants if they believed they had probable cause to seize items not listed in the warrant. There is no genuine issue of material fact that would suggest any exigency that would authorize the Defendants' seizure of the personal property not named in the warrant.

> **2.      The "plain view" exception to the warrant requirement does not authorize the seizure of the Plaintiffs' personal property.**

The following elements are required in order to establish the plain view exception to the search warrant requirement:

> Four factors must be satisfied in order for the plain view doctrine to apply: (1) the object must be in plain view; (2) the officer must be legally present in the place from which the object can be plainly seen; (3) the object's incriminating nature must be immediately apparent; and (4) the officer must have a right of access to the object. *Horton,* 496 U.S. at 136-37, 110 S.Ct. 2301; *McLevain,* 310

F.3d at 438-39.

*United States v. Garcia*, 496 F.3d 495, 508 (6th Cir. 2007) (citing *Horton v. California*,

496 U.S. 128, 136-137 (1990); *United States v. McLevain*, 310 F.3d 434, 438-439 (6th Cir.

2002)).  The items seized were firearms and World War II collector's items, none of which were

illegal for Mr. Six to own.  Mr. Six has the right to keep and bear arms under the Second

Amendment to the United States constitution.  There was nothing incriminating about these

items at all.  Therefore, the plain view exception does not apply.

**IV.      Defendants' own evidence demonstrates that three of the firearms that were seized
         were not returned, and thus there is no genuine issue of fact with regard to these
         three weapons.**

A comparison of the Defendant's own inventory documents (Exhibits 3 and 4, the NB

Inventory and the MCSO Property Supplement respectively) to their own return list (Exhibit 5)

demonstrates that three firearms that were seized were not returned. As noted in the Statement of

Facts above, the following firearms that were listed on Exhibits 3 and/or 4, were not listed on the

Defendants' return list, Exhibit 5:

> **Astra pistol, serial # 613684** (this is #38B on the NB inventory, and appears on the page
> that is bates numbered in the MCSO property supplement, but does not appear on the
> return list)
> **Selbstalde Pistol, serial # 52585** (this is #4-A on the NB inventory, and appears on the
> page that is bates numbered 86 in the MCSO property supplement, but does not appear on
> the return list.)
> **Itica 1911, serial # 1374** (this appears on the page that is bates numbered 95 in the
> MCSO property supplement, but does not appear on the return list. Note that a second
> Itica 1911 firearm (serial #101374) is listed as #70-A on the NB inventory list. Note that
> Mr. Six had two Itica 1911's which were serial numbers #1374 and #100374.  Plaintiffs
> believe that Defendants incorrectly wrote the serial number "101374" for the Itica 1911
> that is actually serial #100374.  Steve Jagers, who made a list of the returned firearms
> indicated that one "Ithaka 1911" serial #100374 was returned, and Plaintiffs agree that the
> Itica 1911 serial #100374 was returned, but the Itica serial #1374 is a second firearm that
> was not returned, and does not appear on the Defendants' return list.)  See Exhibit 6

(Steve Jagers' list of returned firearms).

Regardless of the legality of the initial seizure, the failure to return seized items after a court order obviously violates the United States Constitution. Fourth Amendment of the United States Constitution. See e.g. *Reitz v. County of Bucks*, 125 F.3d 139, (3rd Cir. 1997) (In claims under 42 U.S.C. § 1983, prosecuting attorneys violated clearly established law and were not entitled to summary judgment on issue of qualified immunity where they unreasonably delayed the return of personal property after the court had ordered it to be returned to the owner.) Seizing property and then disposing of it such that it is not available to be returned (even after a court order to return it) is clearly an unreasonable seizure in violation of the Fourth Amendment. See e.g. *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61, 113 S.Ct. 538, 543 (1992) ("A 'seizure' of property, we have explained, occurs when 'there is some meaningful interference with an individual's possessory interests in that property.' *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984).") Obviously, disposing of the Plaintiffs' property so that it is not available to be returned to the Plaintiffs is a "meaningful interference with an individual's possessory interest in that property" constitutes a unreasonable seizure.

Officer Robert Adam Smith has admitted that he is the person responsible for maintaining the evidence in the evidence room at the Meigs County Sheriff's Office during the relevant time frame. See Deposition of Robert A. Smith of April 12th, 2013 at p. 11, ln. 20-23; see *id*. at p. 13, ln. 13 - 18. He also signed the search warrant affidavit for the search warrant. See Exhibit 1 hereto. He clearly had a duty to ensure that the property that was seized was not disposed of improperly. With regard to the Astra pistol, serial # 613684, Selbstalde Pistol, serial # 52585, and Itica 1911, serial # 1374 there is no genuine issue of material fact that those items were seized

but not returned to the owner Plaintiff Robert Six.  See discussion of those items supra; see

Exhibits 3, 4, and 5.  There is also no genuine issue of material fact that Deputy Adam Smith was

the officer responsible for maintaining those items in the Meigs County Sheriff's Office, as he

has explicitly admitted that.  See Deposition of Robert A. Smith of April 12th, 2013 at p. 11, ln.

20-23; see *id*. at p. 13, ln. 13 - 18. He has further admitted that noone else would have had an

opportunity to make off with the weapons.  See *id*. at p. 102 - 103, ln. 23 - 5 ("Q.  And so, then,

you would have been the only person with the opportunity to have removed anything from that

Evidence Room that belonged to Mr. Six?    A.      Yeah.  Unless another officer was standing

beside me and walked out with an armload of guns.")

Because the Defendants' own documentation of what was returned does not include those

three firearms there is no genuine issue of material fact that those weapons were not returned and

that Defendant Adam Smith violated Plaintiff Robert Six's rights under the Fourth Amendment

to the United States Constitution when he failed to return them.

**V. Conclusion**

Therefore for the foregoing reasons, the Plaintiffs respectfully request that the Court grant

their motion for summary judgment with regard to liability against Defendant Adam Smith for

failure to return three of the firearms that were seized, and against all Defendants for the illegal

initial seizure of the firearms and Word War II collector's items.

Respectfully submitted,

/s/Sky Pettey
Sky Pettey - 0072041

Attorney for Plaintiffs

Lavelle and Associates
449 East State Street
Athens, OH 45701-1335
sky@johnplavelle.com
(740) 593-3348 - telephone
(740) 594-3343 - facsimile

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT was filed electronically this 12th day of July, 2013.  Notice will be sent to all parties via the Court's electronic filing system and parties may view the document on that system.

 /s/Sky Pettey
Sky Pettey - 0072041
Trial Attorney for Plaintiffs

Lavelle and Associates
449 East State Street
Athens, OH 45701-1335
spettey@johnplavelle.com
(740) 593-3348 - telephone
(740) 594-3343 - facsimile