# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **Robert B. Six, et al.,** | : | |
| **Plaintiffs,** | : | |
| v. | : | **Case No. 2:11-CV-00698** |
| | : | |
| **Robert Beegle, et. al.** | : | **Judge James L. Graham** |
| | : | |
| **Defendants.** | : | **Magistrate Judge Mark R. Abel** |
| | : | |
| | : | |

## DEFENDANTS PARKS, PETERS, NOHE, ROBERTS AND STAAT'S MOTION FOR SUMMARY JUDGMENT WITH MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, by and through counsel, hereby move this Court to grant them summary judgment in this action pursuant to Fed. R. Civ. P. 56(c) and to dismiss Plaintiffs' claims with prejudice.  Defendants assert that the evidence in this case establishes that there are no genuine issues of material fact and that Defendants are entitled to judgment as a matter of law.  In support of this motion, Defendants submit the attached supporting memorandum.

Respectfully Submitted,

**Michael DeWine**
**Ohio Attorney General**

s/ Brad L. Tammaro
**Brad L. Tammaro (0030156)**
s/ Alexis K. Chancellor
**Alexis Chancellor (0086355)**
Assistant Attorneys General
Organized Crime Investigations Commission
P.O. Box 968, Grove City, Ohio 43123
telephone-614.277.1000, fax-614.277.1010

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiffs Robert and Bobbi Six allege that Defendants violated their constitutional rights on August 5, 2009 and they filed this action pursuant to 42 U.S.C. § 1983. Plaintiffs allege that their Fourth, Fifth, Sixth and Fourteenth Amendment rights were violated when police officers from various agencies executed a search warrant at their residence after conducting a controlled delivery of packages containing marijuana that were addressed to Plaintiffs' residence. Plaintiffs also allege that the Defendants conspired to violate their constitutional rights by unlawfully seizing items of Plaintiffs' personal property and that they unlawfully seized the person of Mr. Six during the search warrant execution on his home.

For the reasons stated herein, there are no genuine issues of material fact. As such, Defendants are entitled to judgment as a matter of law dismissing Plaintiffs' Complaint.

## II. STATEMENT OF FACTS

On August 4, 2009, Postal Inspector Donnie Simmons intercepted two suspicious boxes being sent through the U.S. Mail. (Exhibit 1, Affidavit of Simmons, attached). Simmons noticed that while the destination address, 26225 Rutherford Rd., Albany, Ohio 45710, was a valid address, the return address from Del Mar, California, was fictitious. (Id.) Due to his vast experience identifying suspicious boxes, Simmons recognized that boxes with fake return addresses from the southern California area often times contain marijuana or other illegal contraband. (Id.) Simmons then contacted the Columbus High Intensity Drug Trafficking Area (HIDTA) Parcel Interdiction Task Force. HIDTA Task Force agents intercepted the boxes and found approximately forty (40) pounds of marijuana inside. The boxes were addressed to the home of Robert Six, a resident of Meigs County, Ohio.

Upon discovery of the marijuana in the boxes, Task Force members decided to conduct a controlled delivery of the boxes to the address listed on them. To effectuate the delivery, agents wired the boxes with alarms that would alert the agents when the boxes were opened after delivery to the residence. (J. Peters Dep. Tr. 22-23). Once the alarm sounded, officers waiting nearby would enter the residence and execute the search warrant. (Id.)

Task Force agents arranged to have a controlled delivery of the boxes to Plaintiffs' residence and to execute a search warrant at that residence on August 5, 2009. Inspector Simmons completed the controlled delivery of the boxes and police officers (from multiple agencies) executed the search warrant on August 5, 2009. (Exhibit 2, BCI Investigative Report).

Upon entry into the home, officers found Plaintiff Robert Six near the now-opened packages containing the marijuana.[1] An unidentified officer on the entry team asked Plaintiff if he had any guns on him, to which he answered "no." (R. Six Dep. Tr. at 84). However, the officer then asked Plaintiff "why didn't you tell me those guns were here?" when that officer found gun barrels in the Plaintiffs' vicinity. (R. Six Dep. Tr. at 84, 87). Plaintiff was taken to the ground, placed in handcuffs and then placed in a chair in his living room while various officers conducted a sweep of his home. (R. Six Dep. Tr. at 88-89). Shortly after being cuffed, some officers escorted Plaintiff outside and into a Meigs County Sheriff's Office patrol car, while others continued to check the house for other occupants. (R. Six Dep. Tr. at 94).

During the search of the residence, agents located the two boxes of marijuana used in the controlled delivery, other miscellaneous items of drug paraphernalia, Nazi paraphernalia, and a large

---

[1] Plaintiff Bobbi Six was not present upon Defendants' arrival, and she was not present at any time during the events at issue in this case.

number of firearms located throughout the residence. (Exhibit 2, attached). Defendants left a record of each item taken from Plaintiffs' home on August 5, 2009. (R. Six Dep. Tr. at 160).

Plaintiff was arrested, read his Miranda rights, and transported to the Meigs County Jail after the search of his home was complete. (J. Peters Dep. Tr. at 37-38). Plaintiff was subsequently charged with aggravated drug possession, a third-degree felony. Additionally, a Meigs County grand jury rendered a specification regarding the forfeiture of the firearms taken from the Six residence on the day of his arrest. (Exhibit 3, Meigs County Criminal Complaint, attached ).

Due to defects in the drafting of the forfeiture complaint, the forfeiture of the firearms and other property was denied, and all items were ordered to be returned to the Plaintiffs on April 11, 2011. (Exhibit 4, Judgment Entry, Meigs County, April, 6, 2011, attached).

Plaintiff Robert Six, along with a court-appointed supervisor, Steve Jagers, went to the Meigs County Sheriff's Office to retrieve Six's property on April 11, 2011. Meigs County Sheriff's Office returned the items seized from Plaintiffs' home. (R. Six Dep. Tr. at 161-170). Mr. Six and Mr. Jagers signed an inventory sheet acknowledging the receipt of Plaintiffs' property. (R. Six. Dep. Tr. at 186, Ex. 8; S. Jagers Dep. Tr. at 37-41, Ex.8).

On August 3, 2011, Plaintiffs filed the instant lawsuit alleging that various Defendants violated he and Mrs. Six's Constitutional rights in violation of 42 U.S.C. §1983.

### III. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the moving party establishes that there is no genuine issue of material fact for trial and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The Court must consider all pleadings, depositions, affidavits, and admissions on file and draw reasonable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986); *see Smith v. Hudson,* 600 F.2d 60 (6th Cir.), *cert.*

*dismissed,* 444 U.S. 986, 100 S. Ct. 495, 62 L. Ed. 2d 415 (1979). A Court must look beyond the pleadings and access the proof to determine whether there is a genuine issue for trial. *Burchett v. Kiefer*, 310 F.3d 937, 941, (6th Cir. Ohio 2002), (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp.,* 477 U.S. at 324. To sustain this burden, Plaintiffs may not rest on the mere allegations of their pleadings. Instead, they must set forth specific facts showing that there is a genuine issue for trial. *Potters Med. Center v. City Hosp. Ass'n.,* 800 F.2d 568 (6th Cir. Ohio 1986).

## IV. ARGUMENT

### A. Officers, Nohe, Parks, Peters, Roberts and Staats are entitled to summary judgment.

Plaintiffs claim under 42 U.S.C. § 1983 that Officers Nohe, Parks, Peters, Roberts and Staats violated their Fourth, Fifth, Sixth, and Fourteenth Amendment rights. They further claim that all twelve Defendants conspired to violate their rights in violation of 42 U.S.C. § 1983. However, Plaintiffs completely fail to establish facts that support any of their claims with respect to Defendants Nohe, Parks, Peters, Roberts and Staats, (hereafter named collectively as "Defendants").

### B. Fourth, Fifth, Sixth and Fourteenth Amendments

The Fourth Amendment protects individuals against unreasonable searches and seizures and against excessive and unreasonable force. U.S. Const. Amend. IV. The Fifth Amendment provides

that "no person be deprived of life, liberty or property without due process of law." U.S. Const.

Amend. V. [2] The Sixth Amendment guarantees an individual's right to a speedy trial, to be informed

of the nature of the charges against him, and the right to have assistance of counsel. U.S. Const.

Amend. VI. The Fourteenth Amendment's Due Process Clause provides that no state shall

"deprive any person of life, liberty, or property without due process of law." U. S. Const. Amend.

XIV, § 1. Plaintiffs' Fourth, Fifth, Sixth and Fourteenth Amendment claims must fail, for the

reasons set forth below.

### 1. First Claim: Illegal Seizure of Personal Property.

Plaintiffs allege that Defendants illegally seized Plaintiffs' "personal property, including but

not limited to. . .firearms, and [that] the subsequent failure to return the Plaintiffs' personal property

constitutes violations of the Plaintiffs' rights guaranteed by the Fourth, Fifth, Sixth and Fourteenth

Amendments to the United States Constitution and 42 U.S.C. 1983 et. seq." (Plaintiffs' Amend.

Complaint ¶176).

### a. Illegal Seizure Claim.

Plaintiffs present no evidence to support a claim under the Fourth Amendment. Defendants

conducted a search of Plaintiffs' residence pursuant to a search warrant issued by the Meigs County

---

[2] The Fifth Amendment provides that no individual shall be deprived of life, liberty, or property without due process of law. U.S. Const. Amd. V. However, the "Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government." *Scott v. Clay County, Tennessee*, 205 F.3d 867, 873 fn. 8 (6th Cir. 2000) (citing Sturgell v. Creasy, 640 F.2d 843, 850 (6th Cir. 1981); *Walker v. Hughes*, 558 F.2d 1247 (6th Cir. 1977). Officers Nohe, Parks, Peters, Roberts and Staats are state and/or local law enforcement officers and not officers of the federal government. As such, the Fifth Amendment's Due Process Clause is not applicable to this case and should be dismissed.

Common Pleas Court, filed on August 5, 2009.  The search warrant, in pertinent part, describes the items to be seized as follows:

> Marijuana or other drugs, in any form or condition, rolling papers, pipes, bongs or other devices, instruments or things used to facilitate consuming or using Marijuana, an indeterminate quantity of Marijuana plants or parts thereof and Marijuana seeds, a controlled substance, either growing or cut, together with various tools, devices, objects or things used in the cultivation, preparation/processing *or sale of Marijuana* and/or the processing of the same, together with any records, including paper copies, notebooks, journals, or writings and computerized records, photographs or videotape recordings evidencing the cultivation, preparation/processing or distribution of Marijuana or other illegal drugs relating to the cultivation, preparation/processing or sale of Marijuana, *together with any proceeds from the cultivation, preparation/processing or sale of Marijuana*, said drugs and contraband, or some part thereof, other illegal drugs, dangerous drugs or controlled substances, concealed in and at the premises described herein and above as being the residence, being 26225 Rutherford Rd., Albany OH 45710 along with any garages, outbuildings, sheds, enclosures or motor vehicles, at said location, evidence of possession, distribution and cultivation of marijuana and drugs in violation of 2925 of the Ohio Revised Code, *along with any related evidence*.

(Exhibit 5, Meigs County Search Warrant)(emphasis added).

In addition to the marijuana from the controlled delivery, various officers seized firearms and other weapons, Nazi paraphernalia, small amounts of marijuana found in the home with marijuana paraphernalia, computers, and various documents.  (Exhibit 2).  Defendants Nohe and Parks recovered guns from one of the bedrooms in Plaintiffs' home. (S. Parks Dep. Tr. at 23-24; R. Nohe Dep. Tr. at 23) .  Staats walked weapons from the back bedrooms to the kitchen where officers were taking inventory.  (J. Staats Dep. Tr. at 21).  Defendant Roberts did not seize any items other than guns that were stored in a red chest located in Plaintiffs' home. (C. Roberts Dep. Tr. at 31).  Defendant Peters helped carry items to officers doing inventorying. (J. Peters Dep. Tr. at 48-49).

### i. Defendants seized items which they reasonably believed were contraband, proceeds from illegal drug sales, and evidence related to drug trafficking.

The search warrant specifically listed for seizure any marijuana, drug paraphernalia, documents or computerized data related to the sale of drugs, so seizure of those items cannot be in dispute. Also, while the search warrant did not specifically name firearms as items to be seized, the wording of the warrant provides for the seizure of evidence related to the possession, distribution and cultivation of marijuana and drugs.

Without any real question, it was not unreasonable for the officers to determine that the guns were related to marijuana trafficking. Often, guns are used for protection during the distribution or sale of illegal drugs and they are commonly purchased using proceeds from drug trafficking. Further, it was not inherently unreasonable to determine that Nazi paraphernalia found near the drugs and firearms could be evidence of Plaintiffs' possible involvement in a militia or hate groups, who often times use drug sales to finance their militia operations. *See United States v. Graham*, 275 F.3d 490, fn. 1 (6th Cir. Mich. 2001)(police executing a warrant on a known militia member's residence seized Defendant's weapons and marijuana plants, due to knowledge that Defendant used the money from his drug activities to purchase weapons).

Defendants did not unlawfully seize any items belonging to Plaintiffs. Each and every item seized on August 5, 2009 was taken in reasonable reliance on a valid search warrant supported by probable cause. That warrant allowed for the seizure of drugs and all evidence of drug preparation, possession, or distribution, as well as proceeds of drug trafficking. Defendant Peters stated in his deposition that the amount of marijuana found in Plaintiffs' possession would be more than personal use and considered an amount intended for trafficking purposes. (J. Peters Dep. Tr. at 46-47). Defendants gathered all evidence which they reasonably believed could be linked to a marijuana-selling operation. Thus, Plainitffs' claim on this issue should be denied.

**b. Claim for failure to return Plaintiffs' property.**

As to Plaintiffs' claims that Defendants Nohe, Parks, Peters, Roberts and Staats failed to return every item of personal property to them, Plaintiffs again fail to provide any facts that support this claim.

As previously mentioned, above, "a court must look beyond the pleadings and access the proof to determine whether there is a genuine issue for trial." *Burchett v. Kiefer*, 310 F.3d 937, 941 (6th Cir. Ohio 2002. If a defendant in a civil case moves for summary judgment based on the lack of proof of a material fact, the judge does not need to determine whether or not he thinks the evidence unmistakably favors one party or the other, but whether "a fair minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Various federal circuits have held that for purposes of summary judgment, unsupported conclusory allegations do not create an issue of fact. *See Finstuen v. Crutcher*, 496 F.3d 1139 (10th Cir. Okla. 2007); *Miller Marine Servs. v. Travelers Prop. Cas. Ins. Co.*, 197 Fed. Appx. 62 (2d Cir. 2006); *United States v. Trainor*, 376 F.3d 1325, fn. 5 (even in the civil context of summary judgment, 'conculsory allegations without specific supporting facts have no probative value.') (citing *Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000)); *Todd v. Jones*, 1993 U.S. App. LEXIS 29733 (9th Cir. 1993) (appellant's conspiracy allegation denied because "summary judgment cannot be defeated by conclusory allegations unsupported by factual data"). Here, Plaintiffs have not provided sufficient evidence on which the jury could reasonably find in their favor.

Plaintiffs allege that Defendants conspired to convert items of Plaintiffs' property by failing to document the seizure of some of those firearms. (Plaintiffs' Amend. Comp. ¶171). However,

Plaintiffs allege no facts in support of their claim that any of the Defendants omitted items from their inventory sheets or converted property belonging to Plaintiffs.

During discovery, Defendants requested that Plaintiffs provide any evidence that established what firearms were present in the Six's home on the day of Plaintiff Robert Six's arrest. (Exhibit 6, Defendants' Request for Discovery, p.15). Plaintiffs provided a hodgepodge of receipts, bills of sale, handwritten notes and other miscellaneous items, but were unable to provide any documentary evidence of exactly what weapons Plaintiffs had in their home on the morning of August 5, 2009, prior to officers' arrival. Consequently, Defendants are unable to compare what items Plaintiffs had on the morning of August 5, 2009 to what they received from the Meigs County Sheriff's Office on April 11, 2011 when the items were returned to Plaintiff. While the Plaintiffs provided some documents and receipts that established that they owned particular items at some point in time, they failed to conclusively show which items they *actually possessed* in their home at the time of the raid. Without this information, Plaintiffs cannot show what guns, if any, were not returned to them.

On the day that the guns were returned to Plaintiff by the Meigs County Sheriff's Office, Plaintiff and his court-appointed helper, Steve Jagers, made lists that were supposed to serve as records of exactly which guns Plaintiff received that day. However, Plaintiff admitted in his deposition that the guns were handed to them faster than he and Mr. Jagers were able to record the serial numbers. (R. Six Dep. Tr. at 164). Mr. Jagers also admitted that he did not include all of the firearms on the inventory list he created that day, and that he failed to include on his list weapons that were actually returned to Plaintiff. (S. Jagers Dep. Tr. at 59-60). As a result, Plaintiff cannot show that the handwritten receipts created by Mr. Jagers and Plaintiff accurately reflected every firearm they received. However, deputies participating in the return of Plaintiffs' property also

compiled a list of each item returned, and that inventory sheet was acknowledged and signed by Robert Six and Steve Jagers. (R. Six Dep. Tr. at 186; S. Jagers Dep. Tr. at 37-41).

Plaintiffs, without any factual support, allege that each and every police officer on the scene that day stole personal property from the Plaintiffs. However, Plaintiffs do not have first-hand knowledge that any officer present that day misappropriated any items belonging to Plaintiffs. Indeed, Plaintiffs do not provide any facts even tending to show that any named Defendants misappropriated a single item of Plaintiffs' property.

Neither Peters, Parks, Nohe, Staats, nor Roberts stated that they saw anyone steal anything while at the Six residence. Further, Parks, Peters, Nohe, Staats and Roberts did not have the responsibility of storing Plaintiffs' property at the Meigs County Sheriff's Office, nor did they have the authority to enter the property room at the Meigs County Sheriff's Office, where all property was taken and stored. (R. Nohe Dep. Tr. at 30-31). Defendants Parks and Staats are employees of the Washington County Sheriff's Department in Washington County, Ohio. (S. Parks Dep. Tr. at 9-10; J. Staats Dep. Tr. at 7). Defendants Roberts and Peters are police officers at the Columbus Police Department in Columbus, Ohio. (C. Roberts Dep. Tr. at 8; J. Peters Dep. Tr. at 8). Defendant Nohe is an officer with the Marietta Police Department in Marietta, Ohio. (R. Nohe Dep. Tr. at 7). Defendants Parks, Peters, Nohe, Staats and Roberts did not see or touch any of Plaintiffs' property after they left Meigs County, Ohio on August 5, 2009. (S. Parks Dep. Tr. at 40; J. Staats Dep. Tr. at 33). Plaintiffs have not alleged facts that show Defendants failed to return all of Plaintiffs' property, and likely will be unable to do so at trial.

Plaintiffs simply make conclusory allegations in their Complaint without providing specific facts in support of those allegations. Defendants request that this claim be denied.

**2. Second Claim**: **Illegal seizure of personal property by damaging it.**

In their Second Claim, Plaintiffs allege that each Defendant caused damage to some of the firearms that were returned to the Plaintiffs and that this constitutes an illegal seizure in violation of Plaintiffs' rights under the Fourth, Fifth, Sixth and Fourteenth Amendments.

Again, Plaintiffs make conclusory statements in their Complaint that all Defendants damaged items belonging to Plaintiffs. Again, they provide no facts to support this claim, other than a statement by Plaintiff Robert Six during his deposition that some of the gunstocks of his weapons were damaged because the evidence tags that were placed on them were "sticky back" tags that he could not get off the weapons without taking the finish off of the wood. (R. Six Dep. Tr. at 218-219). To repair any damage done by the evidence tag residue, Plaintiff supposedly bought supplies and fixed the gunstocks himself. (R. Six Dep. Tr. at 219).

The property damage claims should be dismissed against the moving Defendants. Defendants Parks, Peters, Nohe, Staats and Roberts were never in custody or control of the items seized and eventually returned to Plaintiffs. (R. Nohe Dep. Tr. at 31; S. Parks Dep. Tr. at 40; J. Staats Dep. Tr. at 33). Defendant Nohe stated that Meigs County took all of the weapons seized to its facility. (R. Nohe Dep. Tr. at 30-31). Indeed, Plaintiff admits as much in his Complaint by stating that all evidence seized from his residence on August 5, 2009, was taken to the Meigs County Sheriff's Office. In paragraph 131 of their Complaint, Plaintiffs state that "Defendant Beegle is the Sheriff of Meigs County, Ohio and as such is ultimately responsible for the perseveration, storage and proper disposition of personal property delivered into the custody of the Meigs County Sheriff's Office, including but not limited to personal property kept in any evidence room or like facility maintained by the Meigs County Sheriff's Office." *Id.*

As previously stated, Parks, Peters, Nohe, Roberts and Staats are not employees of the Meigs County Sheriff's Office. They did not have, nor have they ever had, access to that Office's

property room.  After the conclusion of the search at Plaintiffs' home, Defendant Staats drove back to Marietta, and not the Meigs County Sheriff's Office.  (J. Staats Dep. Tr. at 33, 38).  Staats stated that after he left the scene that day, he did not see the items seized from Plaintiffs' home again.  (J. Staats Dep. Tr. at 33).  Defendant Parks did not go to Meigs County Sheriff's Office to help unload the weapons, and did not see or handle any of Plaintiffs' property after he left their residence on August 5, 2009. (S. Parks Dep. Tr. at 40).  Defendant Peters drove some of Plaintiffs' property to the Meigs County Sheriff's Office that day, but he only participated in the unloading of the weapons from vehicles by passing the guns from the trucks to Meigs County deputies who walked the guns up the stairs to the Meigs County Sheriff's Office property/evidence room. (J. Peters Dep. Tr. at 59).  Peters did not even see the inside of the evidence room at the Sheriff's Office. (J. Peters Dep. Tr. at 60).  Defendant Roberts rode with Peters to the Meigs County Sheriff's Office, but she did not assist in unloading any firearms from the vehicles.  (C. Roberts Dep. Tr. at 38).  She remained in the car while others unloaded the property and took it into the Sheriff's Office.  (C. Roberts Dep. Tr. at 38-39).

Defendants Parks, Peters, Nohe, Staats and Roberts were not responsible for the storage, handling or returning of Plaintiffs' property to him.  Plaintiffs fail to allege that Parks, Peters, Nohe, Roberts or Staats placed any evidence tags on any weapons stored at the Meigs County Sheriff's Office. Thus, Plaintiffs' second claim should be dismissed as to these Defendants.

### 3.  Third Claim:  Section 1983 claim for illegal seizure of Mr. Six's person.

In their Third Claim, Plaintiffs allege that Defendants unreasonably seized and detained Plaintiff Robert Six in violation of the Plaintiffs' Fourth, Fifth, Sixth, and Fourteenth Amendment rights and 42 U.S.C. 1983.  Plaintiffs allege that Robert Six was detained in a police vehicle and

subject to extreme heat conditions for several hours, and that Plaintiff passed out from excessive heat inside the vehicle.

The Fourth Amendment protects individuals against unreasonable search and seizure and against excessive force. U. S. Const. Amend. IV. The U.S. Supreme Court has held that the reasonableness of the use of force in effecting an arrest must be judged from the perspective of a reasonable officer at the scene, not with the perfect vision of hindsight. *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Plaintiff Robert Six's account of his time in the Meigs County patrol car varies wildly. During his deposition, Plaintiff stated that he was placed in the police car approximately ten to fifteen minutes after the police officers entered his home. (R. Six Dep. Tr. at 102). Plaintiff then stated that he passed out in the back of the police car approximately 15-20 minutes after he was placed inside the vehicle, due to extreme heat. (R. Six Dep. Tr. at 102). Plaintiff then stated that he awoke after some time and was again "awake for a while" before he was transported from his residence to the Meigs County Jail. (R. Six Dep. Tr. at 128).

Despite his allegation that he was passed out for most of his stay in the police vehicle, inexplicably, Plaintiff can recall events of the day that occurred during his supposed unconsciousness.

Plaintiff stated in his deposition that he saw a man, who he later learned was Meigs County prosecutor, Matt Donahue, walk up to the Six residence with a stack of pizzas for the officers executing the search. (R. Six Dep. Tr. at 112). Although he claims he passed out within fifteen minutes after being placed in the car, Plaintiff stated that he was awake when pizzas arrived for the officers, which he admits did not occur within the first 15-20 minutes of his detainment in the car. (R. Six Dep. Tr. at 126).

14

Plaintiff can argue that he saw the pizzas after he woke up from being passed out, but he stated in his deposition that he awoke only after feeling the fresh air rush into the car when a Meigs County Sheriff's deputy opened up the car door to talk to him. (R. Six Dep. Tr. at 125). Plaintiff stated that the officer who opened the door offered him a soda because it was "all they had left" from their lunch, but Plaintiff asked the officer to go into Plaintiff's house and get a bottled water for him, which the officer did. (R. Six Dep. Tr. at 111). Plaintiff stated that after he awoke, officers asked him a few questions and then transported him to jail shortly thereafter. (R. Six Dep. Tr. at 124).

Plaintiff claimed to be passed out for nearly the entire duration of the search of his house, or approximately two hours and fifteen minutes. (R. Six Dep. Tr. at 124, 128). Plaintiff acknowledged that the search started around 4 p.m. and that he arrived at the police station at 7 p.m. (R. Six Dep. Tr. at 128). Plaintiff also acknowledged that it took approximately thirty (30) minutes to get from his residence to the Meigs County Jail, so that meant that he left his residence around 6:30. (R. Six Dep. Tr. at 124). By Plaintiff's own account, he was at the search for a total of two and a half hours, and he was passed out for two hours and fifteen minutes. If he was only awake for approximately ten- to-fifteen minutes in the beginning of his detainment in the car, and for five to ten minutes *after* regaining consciousness, there is no way that he could have seen the events that he said he saw.

Either Plaintiff is lying about seeing the prosecutor bringing pizzas, or he is lying about passing out. However, several of the named Defendants acknowledged in their own depositions that pizza was served, which corroborates Plaintiffs' observation that pizza was served. (R. Nohe Dep. Tr. at 27; J. Staats Dep. Tr. at 25- 26; S. Parks Dep. Tr. at 30). Starkly absent from Defendants Nohe's, Parks', Peters', Staats' and Roberts' statements, however, is any statement that they saw Plaintiff passed out in a police car.

Plaintiff fails to explain how he saw the pizzas being delivered to the officers if he only awoke *after* lunch was concluded. Plaintiff cannot explain how he was passed out for hours, but was still able to witness so much of the two-and-a-half hour period in which the search occurred. Regardless of which version of Plaintiffs' story was correct, Defendants Nohe, Staats, Peters, Parks and Roberts did not view Plaintiff in any distress, and he did not make them or any other Defendants aware that he suffered any injury in the patrol car. As such, Plaintiffs' Third Claim should be dismissed.

### a. Plaintiff fails to demonstrate any injury from being detained in a police vehicle.

The basis of Plaintiff's unreasonable seizure claim is not that he suffered lasting physical damage from passing out during his detention in the police car. Instead, he claims that he was placed in fear of harm from heat exposure while in back of the vehicle. However, despite his fear of impending injury or death, Plaintiff did not state that he banged on the windows of the police car or attempted to open the police car doors, despite the fact that he stated that his hands were free of handcuffs because they slid off at some point during his detainment in the police car. (R. Six Dep. Tr. at 125). Mr. Six alleges that he was jumping up and down, trying to get an officer's attention, but no one looked at him. (R. Six Dep. Tr. at 117). However, when the Meigs County Sheriff's deputy did open the door according to Plaintiff's account, Plaintiff made no mention of the conditions that placed him in fear for his safety. To the contrary, Plaintiff simply warned the officer that his handcuffs had slipped off, and that he was thirsty and wanted a bottle of water. (R. Six Dep. Tr. at 110-111).

In addition to his conflicting account of what happened during his alleged unconsciousness, Plaintiff also failed to provide evidence that he ever requested or received medical attention after passing out in the patrol car. Upon arrival at the Meigs County Jail, Plaintiff again did not inform

the nurses or staff at the prison that he recently passed out, nor did he inform them that he was any in physical pain as a result of his detention. (R. Six Dep. Tr. at 129).

Lastly, before actually being admitted into jail, Plaintiff answered a medical questionnaire administered by jail personnel in which he did not indicate any injuries from being held in the back of the police car. (R. Six Dep. Tr. at 128-132). Plaintiff argues that there is not a question on the form that specifically asked if he suffered any injuries while in the police car. (R. Six Dep. Tr. at 132). However, the questionnaire did ask if there were "visible signs of trauma or illness requiring immediate emergency or doctor's care?" and "physical injuries, deformities, prosthetic devices", both of which were answered "no" by the observing booking officer. (Exhibit 7, Inmate Medical Questionnaire). Additionally, the questionnaire asked if Plaintiff suffered any "fainting", to which he responded "no." (Exhibit 7).

Plaintiff offers wildly varying accounts of his "passing out" during his detainment in the patrol car that day and he also fails to present any evidence that he asked for, required, or received medical attention on the day of his arrest or the days immediately thereafter. As such, Plaintiffs' third claim is completely unsupported and should be dismissed.

4. **Fourth Claim: Claims for Malicious Prosecution against Defendants Woods and Sheilds.**

Plaintiffs' Fourth Claim is brought against Defendants Woods and Shields only. As such, Defendants Nohe, Parks, Peters, Roberts and Staats will not discuss that claim herein.

5. **Fifth Claim: Civil conspiracy claim under Section 1983.**

   a. **Plaintiffs fail to sufficiently state a § 1983 conspiracy claim upon which relief can be granted.**

Plaintiffs claim that Defendants conspired to violate their Fourth, Fifth, Sixth and Fourteenth Amendment rights under 42 U.S.C. § 1983. However, Plaintiffs fail to allege the necessary elements of a Section 1983 conspiracy claim. Thus, their claim should be dismissed.

The Sixth Circuit has defined a civil conspiracy claim as "an agreement between two or more persons to injure another by unlawful action." *Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir. 2000). The elements of a civil conspiracy claim are: (1) that there was a single plan, (2) that the alleged co-conspirator shared in the general conspiratorial objective, and (3) that an overt act was committed in furtherance of the conspiracy, and (4) that the overt act caused injury to the complainant. *B & B Entm't, Inc. v. Dunfee*, 630 F. Supp. 2d 870, 884 (S.D. Ohio 2009) (citing *Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985)).

Civil conspiracy claims under § 1983 must be pled with specificity. "Claims of conspiracy must be pled with some specificity; vague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim." *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

Plaintiffs failed to establish any material facts sufficient to support a conspiracy claim under Section 1983. Plaintiffs allege that all Defendants conspired to deprive Plaintiffs of their rights by illegally seizing and holding their property and the person of Mr. Six. However, Plaintiffs do not allege facts to support the finding of a single plan between the twelve officers present that day to deprive the Plaintiffs of their property, nor to illegally seize the person of Mr. Six. Also, Plaintiffs allege no facts that demonstrate a plan amongst any Defendants to misappropriate any property located at Mr. Six's residence on August 5, 2009.

Plaintiffs' conspiracy claim should be dismissed for failure state a claim upon which relief can be granted.

**C. Defendants Nohe, Parks, Peters, Staats and Roberts are entitled to Qualified Immunity.**

Even if Plaintiffs had evidence to indicate that Defendants violated their constitutional rights, Defendants would nevertheless be entitled to qualified immunity. "Generally, government officials performing discretionary functions enjoy qualified immunity. This immunity shields them from civil damages liability provided their actions 'could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Johnson v. Laccheo*, 935 F.2d 109, 111 (6th Cir. 1991) (*quoting Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987)). "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Id.* "The contours of the clearly established right 'must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'" *Id.*

A government official "will be shielded from liability so long as the employee acted under the objectively reasonable belief that his or her actions were lawful." *Ahlers v. Schebil*, 188 F.3d 365, 372-73 (6th Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815-19 (1982)). "A successful § 1983 claimant must establish that the defendant acted knowingly or intentionally to violate his or her constitutional rights such that ***mere negligence or recklessness is insufficient***." *Id.* (emphasis added).

Plaintiffs fail to establish that Defendants Nohe, Parks, Peters, Roberts or Staats acted unreasonably in their handcuffing and detention of Plaintiff in a police vehicle. More specifically, Plaintiff does not allege any facts or provide any evidence to support his contention that Defendants Nohe, Parks, Peters, Roberts or Staats handcuffed him or placed him in the vehicle in the first place.

In sharp contrast to the lack of proof provided by the Plaintiff, in their sworn depositions, Nohe, Parks, and Roberts stated that they only saw Mr. Six briefly while he was still inside his home after the entry team came in to execute the warrant. (C. Roberts Dep. Tr. at 32; R. Nohe Dep. Tr. at 28; S. Parks Dep. Tr. at 36-37). Defendant Parks stated in his deposition that he never saw Plaintiff Robert Six again, after the initial entry into the residence. (S. Parks Dep. Tr. at 31). Defendant Staats said he may have seen Plaintiff in a patrol car briefly as Staats walked outside to retrieve his police dog from his van, but that he did not have any contact with Plaintiff, nor did he recall Plaintiff making any attempts to communicate with him. (J. Staats Dep. Tr. at 20-21). Defendants Nohe, Parks, Peters, Staats stated in their sworn depositions either that none of them handcuffed Plaintiff or put him in the police car. (J. Staats Dep. Tr. at 38; R. Nohe Dep. Tr. at 32; S. Parks Dep. Tr. at 39). Nohe stated he only saw Plaintiff for three or four seconds that day. (R. Nohe Dep. Tr. at 32). Defendant Roberts remained in the kitchen inventorying weapons from a red chest inside Plaintiff's home, and never saw Plaintiff once he was taken outside. She never saw him in a patrol car. (C. Roberts Dep. Tr. at 31).

Defendant Peters stated that at some point after Plaintiff was taken to the police cruiser, Peters joined him in the back seat of the car to read Plaintiff his Miranda rights. (J. Peters Dep. Tr. at 37-38). Mr. Six refused to speak to Defendant Peters without an attorney present, at which time Defendant Peters exited the car. (J. Peters Dep. Tr. at 40). Defendant Peters also stated that he believed there was a uniformed deputy outside of the patrol car that contained Plaintiff Six. (J. Peters Dep. Tr. at 39). After speaking with Plaintiff in the patrol car, Defendant Peters went back into the Six residence to assist in the search. (J. Peters Dep. at 41). While inside the police vehicle, Defendant Peters did not recall feeling hot or uncomfortable. (J. Peters Dep. Tr. at 55, 64).

Plaintiff's deposition discloses that, while he claims that he was passed out almost the entire time he was in the car, he is somehow able to recall facts and retell events that took place during his unconsciousness. Further, when officers did open the car to speak with Mr. Six, he failed to inform them that he passed out or that he was in need of any assistance. (R. Six Dep. Tr. at 125-126). Indeed, despite the supposedly dire situation in the back of the police car that day, Plaintiff's deposition discloses no attempt to tell a single person of his plight. Plaintiff fails to make any mention of his passing out to any officer present that day, nor does he report his passing out to medical personal at the jail.

Defendants Parks, Peters, Staats, Nohe and Roberts were not Meigs County Sheriff's Deputies, and none stated that they were the deputies assigned to watch after Plaintiff while he was in a Meigs County patrol car. (R. Nohe Dep. Tr. at 28). When asked if any officer appeared to be assigned to guard Plaintiff Robert Six, Defendant Staats stated that there was a uniformed Meigs County officer standing in the driveway where Plaintiff was located inside a patrol car. (J. Staats Dep. Tr. at 27). As Defendant Nohe stated in his deposition, he did not notice where Plaintiff Six was being detained, because that "wasn't his job." (R. Nohe Dep. Tr. at 28). With the exception of Defendant Peters who spoke to Plaintiff early on in the day, the other Defendants did not have any interaction at all with the Plaintiff that day.

Plaintiffs failed to establish that Defendants violated their constitutional rights, or that their rights were so clearly established that a reasonable officer would have known that he was violating their rights. As a result, Defendants are entitled to qualified immunity with all constitutional claims dismissed as to them.

Defendants are also entitled to qualified immunity as to the illegal seizure claims and failure to return personal property claims. As previously stated above, the Defendants searched Plaintiffs'

residence pursuant to a search warrant, and items seized were either specifically listed in the search warrant or covered by the phrasing in the warrant that allowed for the seizure of any items related to the crime for which the warrant was sought. Plaintiffs failed to allege facts which show that any Defendants acted unreasonably in relying upon a search warrant, duly issued by a Magistrate, when executing the search warrant of Plaintiffs' residence on August 5, 2009.

Plaintiffs demonstrate no personal knowledge and present no testimony from any other person stating that any defendant misappropriated any items of Plaintiffs' property. Plaintiffs make conclusory allegations in their Complaint, but fail to state any facts that show a plan to steal Plaintiffs' property. Plaintiffs also failed to produce in discovery any record of how many firearms Plaintiffs owned on August 5, 2009, and how many guns were present in the home on that morning, prior to the police's arrival. As such, Defendants should be entitled to summary judgment on all claims.

## V. CONCLUSION

Defendants Nohe, Staats, Peters, Parks and Roberts are entitled to judgment as a matter of law because there is no evidence of actions or inactions committed by any of them that rise to the level of a constitutional violation. Further, each Defendant is entitled to the defense of qualified immunity. WHEREFORE, Defendants respectfully move this Court to grant their Motion for Summary Judgment.

Respectfully Submitted,

**Michael DeWine**
**Ohio Attorney General**

s/ Brad L. Tammaro
**Brad L. Tammaro (0030156)**
s/ Alexis K. Chancellor

**Alexis Chancellor (0086355)**
Assistant Attorneys General
Organized Crime Investigations Commission
P.O. Box 968
Grove City, Ohio 43123
telephone-614.277.1000
facsimile-614.277.1010
btammaro@ag.state.oh.us
Alexis.Chancellor@ohioattorneygeneral.gov
**Attorney for Defendants**

**Certificate of Service**

      This is to certify that the foregoing **ANSWER AND JURY DEMAND DEFENDANT GREG NOHE** was served upon the following by **e-mail**, this 12th day of July, 2013.

           **Sky Pettey, Esq. (0072041)**
           Lavelle and Associates
           449 East State Street
           Athens, Ohio 45701
           sky@johnplavelle.com
           telephone-740.593.3348
           facsimile-740.594.3343
           Attorney for **Plaintiff**

           _____
           **s/ Alexis K. Chancellor**
           **Alexis Chancellor (0086355)**
           Assistant Attorney General
           Attorney for Defendants Nohe, Parks, Peters, Staats, and Roberts